SIXTH DIVISION

                                               June 27, 1997  

No. 1-96-2529

HELEN SIMON, MARK SIMON and                 )  Appeal from the

RITA SIMON,                                 )  Circuit Court of

                                            )  Cook County.

Plaintiffs-Appellants,                 )

                                            )

v.                                )

                                            )

SAMUEL WILSON, Individually and as Trustee  )

under the Samuel Wilson Trust established   )

pursuant to agreement dated March 19, 1992; )

DAVID SIMON; LAWRENCE WILSON; STEVEN WILSON;)

SCHUYLER, ROCHE & ZWIRNER, a Professional   )

Corporation; RICHARD B. WEINBERG; and       )

DAVID A. NOYES & COMPANY,                   )  Honorable 

                                            )  Albert Green,

Defendants-Appellees.                  )  Judge Presiding.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs, who are the daughter and grandchildren of the late Ruth Wilson (Ruth) and legatees under Ruth's will, alleged in their pleadings that Ruth's husband, Samuel Wilson (Sam), misappropriated Ruth's interest in joint tenancy property during her lifetime and misled her regarding the effect of her will. In so doing, plaintiffs allege that Sam violated his fiduciary, statutory and common law duties 
vis a vis
 Ruth. Plaintiffs further allege that attorney Richard Weinberg (Weinberg) and his firm, Schuyler, Roche & Zwirner (the firm), committed malpractice in failing to ascertain and protect Ruth's interests, resulting 

in the frustration of Ruth's testamentary intentions. Lastly, plaintiffs' complaint joined the brokerage firm of David A. Noyes & Company (Noyes) as a defendant, alleging Noyes has custody of property that is the subject of this suit.

On March 7, 1996, the trial court granted motions to dismiss brought by Sam, individually and as trustee of his revocable trust, and Noyes, pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 1994). On July 17, 1996, the trial court dismissed Weinberg and the firm on summary judgment pursuant to section 2-1005 of the Code of Civil Procedure. 735 ILCS 5/2-1005 (West 1994). The trial court also quashed plaintiffs' notice to take Sam's deposition, denied plaintiffs leave to amend their complaint and denied plaintiffs' motion to reconsider. 

On appeal, plaintiffs argue that (1) the trial court's decision to dismiss Sam was erroneous and contrary to the provisions of the Joint Tenancy Act (765 ILCS 1005/4 (West 1994)) and Sam's fiduciary obligations; (2) the trial court erred in granting summary judgment in favor of Weinberg and the firm based on its finding that they owed no duty to Ruth; (3) the trial court erred in dismissing Noyes as an unnecessary party; and (4) the trial court erred in denying plaintiffs leave to amend their complaint. 

For the reasons that follow, we affirm the trial court's dismissal of Noyes, reverse the dismissal of Sam and reverse summary judgment in favor of Weinberg and the firm. Additionally, we affirm the trial court's decision regarding plaintiffs' proposed amendment and Sam's evidence deposition.

Ruth and Sam were married for 40 years, until Ruth's death on August 4, 1993. In October 1991, Sam engaged Weinberg and the firm to assist in the planning of his and Ruth's estate. In their initial conversations, Sam informed Weinberg that Ruth was ill and could not, therefore, join their meetings.

In fact, from 1988 until the time of her death, Ruth had diminished physical and mental abilities and was dependent on Sam for attention to her personal and financial needs. Because of her illnesses, including peripheral vascular disease affecting Ruth's feet and legs, she could not leave her home unassisted. Ruth's ability to read was also compromised by poor eyesight such that she could not read the newspaper or other printed materials. Ruth relied on others to read such materials to her.

Ruth was hospitalized in November 1991. During her hospitalization, Sam asked Ruth to execute a power of attorney covering all property in which Ruth had an interest. Sam informed Ruth that the power of attorney was necessary to enable him to accomplish their estate planning, to manage their property and to negotiate the Medicare and insurance checks made payable to Ruth.

Ruth agreed and, on November 6, 1991, she executed a statutory power of attorney for property designating Sam as her agent. Ruth's children were present in the hospital when the document was executed and delivered to Sam. Plaintiffs' complaint alleges that Sam "encouraged" Ruth to repose her trust in him and became, therefore, responsible as a fiduciary to Ruth.

At the time Ruth executed the power of attorney, she owned real and personal property jointly with Sam valued in excess of $2 million, the majority being investment securities and the marital residence located in Lincolnwood, Illinois.

Contemporaneous with Ruth's execution of the power of attorney, Sam formally engaged Weinberg and the firm to assist in preparation and execution of an estate plan for Ruth and Sam. Plaintiffs' complaint alleges that "Sam encouraged Ruth to repose her trust and confidence in him and to rely on him in choosing [Weinberg] and [the firm]." Sam informed Weinberg of Ruth's desire to have her daughter and grandchildren (plaintiffs) benefit from her estate. With this knowledge and upon Sam's request, Weinberg prepared a draft will for Ruth. Weinberg never met or spoke with Ruth.

Sam asked Weinberg to make changes in the draft will, and Weinberg sent the revised or second will to Sam. Weinberg maintains that this second will was also a draft and not meant to be executed. However, on January 6, 1992, in the presence of Sam and two witnesses, Ruth executed the will. In its operative part, the will provides:

 "
ARTICLE II

   
Personal Property

I give all of my personal and household effects, automobiles and all of my other tangible personal property, other than jewelry, held for purposes of personal use and enjoyment, as distinguished from business or investment purposes, with any insurance policies thereon, to my husband, SAMUEL WILSON (hereinafter referred to as 'Sam'), if he survives me. I give all of my jewelry and, if Sam does not survive me, all the rest of my personal and household 

effects, automobiles and other tangible personal property, 

to my daughter, HELEN SIMON, and her children, MARK SIMON, 

DAVID SIMON, and RITA SIMON (hereinafter referred to by their respective first names), to be divided among them as they agree ***.

  
ARTICLE III

Use of Our Home

If Sam survives me and so desires, he may live in, use or occupy any home which I own at my death during his lifetime for so long as he may desire to do so, provided Sam maintains the home, pays all real estate taxes, insurance premiums and interest (but not principal) on any mortgage thereon. If at any time said home is sold with Sam's consent during Sam's lifetime, or because Sam has become disabled to such an extent that it is reasonable to conclude he will not be able to live in said home in the future, the proceeds of such sale shall be distributed to those of Helen, Mark, David and Rita who are living at the time of said sale, in equal shares. Upon Sam's death, if the home has not been sold previously, I hereby give and devise said home to those of Helen, Mark, David and Rita who are living at Sam's death.

      
ARTICLE IV

 
Balance of My Estate

I hereby give, devise and bequeath all of the rest, residue and remainder of my estate (which may include our home if Sam does not survive me) to those of Helen, Mark, David and Rita who survive me, in equal shares."

While Ruth was still living, Sam created, with the help of Weinberg, his own will and revocable "grantor" trust, of which he was trustee. Sam's will and trust provide, "I do not provide in this instrument [will and trust] for my wife's daughter, Helen Simon, and her children because my wife will be providing for them in her Will."

Ruth's will was never revoked or modified from the time of its execution to the time of her death, and Sam retained possession of Ruth's will at all times. After Ruth's death, Sam delivered Ruth's will to Weinberg, who filed it with the clerk of the circuit court of Cook County. Sam has administered Ruth's estate without probating Ruth's will or initiating any court proceedings under the Probate Act of 1975 (755 ILCS 5/1-1 
et seq.
 (West 1994)). Pursuant to Ruth's will, her daughter and grandchildren received Ruth's jewelry having an aggregate value of approximately $1,700.

During their 40-year marriage, all of the stocks, bonds and other savings and investments Sam and Ruth acquired were held in joint tenancy. In March 1992, Sam executed his 
inter
 
vivos
 trust. At the same time, Sam received from Weinberg the following written instruction relating to registration of Sam's assets in the trust:

"Transfer all of your assets (not Ruth's) as follows:

'Samuel Wilson, as Trustee of the Samuel Wilson Trust established pursuant to agreement dated March 19, 1992.'"

In apparent disregard of Weinberg's advice, Sam delivered all of the securities jointly owned by him and Ruth to Noyes, which registered the securities, valued at approximately $1.34 million, in an account under the name of the Samuel Wilson Trust. The power of attorney was delivered with the securities and appears to be the authority by which the securities were registered. The securities remain in Sam's account with Noyes.

Plaintiffs allege that Sam benefitted from the transfer of the securities into his trust in that he gained the right to assume and exercise exclusive ownership over the securities,  destroyed Ruth's survivorship rights to the securities, frustrated Ruth's desire that her property pass to her daughter and grandchildren, and lessened Ruth's interests in the securities. Plaintiffs, as beneficiaries under Ruth's will, seek to establish Ruth's interests in the property held in trust with Noyes.

In addition to their complaint, plaintiffs submitted the affidavit of attorney Michael Susman (Susman), who offered the expert opinion that Ruth may be deemed a client of Weinberg and the firm, thereby creating a duty that Weinberg and the firm subsequently breached. Susman's opinion was not rebutted below.

Plaintiffs initially argue that the trial court erred in granting Sam's motion to dismiss. The question posed by a section 2-615 motion is whether sufficient facts are stated in the complaint which, if established, could entitle the plaintiff to relief. 
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469 (1994). In considering such a motion, the court must take all well-pleaded facts in the complaint as true and draw reasonable inferences from those facts that are favorable to the pleader. 
Ziemba v. Mierzwa
, 142 Ill. 2d 42 (1991). However, conclusions of law or fact contained within the challenged pleading will not be taken as true unless supported by specific factual allegations. 
Ziemba
, 142 Ill. 2d at 47. A cause of action should not be dismissed on the pleadings unless it is apparent that no set of facts can be proven that would entitle the plaintiff to recover. 
Illinois Graphics
, 159 Ill. 2d at 488. Since the question of whether a complaint states a cause of action is one of law, our review of a trial court's dismissal of a complaint pursuant to section 2-615 is 
de
 
novo
. 
Beck v. Budget Rent-A-Car
, 283 Ill. App. 3d 541 (1996). 

The trial court's dismissal of Sam was based on its perception that, because Sam would have succeeded to Ruth's interest in the joint tenancy property upon her death, the fact that Sam severed the joint tenancy by transferring the subject property into his trust has no effect and can be excused. We disagree, finding this "no harm, no foul" determination contrary to the rules governing joint tenancy property.

Plaintiffs' complaint alleges that Sam was a fiduciary to Ruth. This is undeniable, as Sam achieved this status as a matter of law upon execution of Ruth's power of attorney. See 
In re Estate of Rybolt
, 258 Ill. App. 3d 886 (1994) (a power of attorney gives rise to a general fiduciary relationship between the grantor of the power and the grantee as a matter of law). In addition, a fiduciary relationship may arise from a relationship that is moral, social, domestic or personal in its origin. 
Wiszowaty v. Baumgard
, 257 Ill. App. 3d 812 (1994). When no fiduciary relationship exists as a matter of law, the plaintiff must plead facts showing that one party placed trust and confidence in the other so that the latter gained influence and superiority over the former. 
Farmer City State Bank v. Guingrich
, 139 Ill. App. 3d 416 (1985). Factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health, mental condition, education and business experience between the parties, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to the other and reposed faith and confidence in him. 
Farmer City State Bank
, 139 Ill. App. 3d at 424.

In the present case, plaintiffs pled sufficient, if not overwhelming, facts to support their allegation that Sam was Ruth's fiduciary, including, and in addition to the executed power of attorney, Ruth's near total dependence on Sam, the duration of their marriage, Ruth's diminished physical and mental capabilities, and the considerable trust Ruth placed with Sam. As Ruth's fiduciary, Sam owed her a duty of loyalty that plaintiffs allege was breached upon Sam's transfer of the joint tenancy securities into his living trust. 

A joint tenancy will be severed when one or more of the four unities of time, title, interest or possession is destroyed. 
In re Estate of Zoglauer
, 229 Ill. App. 3d 394, 398 (1992). A joint tenant can sever a joint tenancy by conveying his interest without the consent or permission of the other. 
Zoglauer
, 229 Ill. App. 3d at 398; 
Minonk State Bank v. Grassman
, 95 Ill. 2d 392, 395-96 (1983). 

Sam's allegedly unilateral transfer of the joint tenancy property into his trust effectively severed the joint tenancy and resulted in a benefit to Sam and detriment to Ruth. Because Sam was a fiduciary to Ruth, the transfer is presumptively fraudulent. See 
Rybolt
, 258 Ill. App. 3d at 889 (a presumption of fraud attaches to a transfer by a fiduciary for his own use, and this presumption is only overcome by clear and convincing evidence); 
Glass v. Burkett
, 64 Ill. App. 3d 676, 681 (1978) (where a fiduciary relationship exists at the time of a transaction whereby the dominant party appears to gain, the transaction is deemed presumptively fraudulent but such presumption is not conclusive and may be rebutted by clear and convincing proof that the dominant party has exercised good faith). That Sam benefitted from the transfer is clear. As plaintiffs' complaint observes, Sam gained the right to exercise exclusive ownership over Ruth's interest in the property, destroyed Ruth's survivorship rights in the property, frustrated Ruth's desire that her property pass to her daughter and grandchildren and otherwise lessened Ruth's interest in the property. Therefore, the transfer, by virtue of Sam's status as a fiduciary, is presumptively fraudulent. Moreover, the transfer of property may be set aside because of Sam's breach of his fiduciary duties. 
In re Estate of Kaminski
, 200 Ill. App. 3d 309 (1990). The trial court's order of dismissal is therefore reversed. On remand, Sam will be provided the opportunity of coming forward with clear and convincing evidence that his act of transfer was made in good faith and with the disclosure of all relevant information to Ruth. See 
Glass
, 64 Ill. App. 3d at 681.

If Sam is incapable of rebutting the presumption of fraud attached to his transfer, the trial court must then determine the present status of the property held in Sam's trust and fashion an appropriate remedy. Following the severance of a joint tenancy, by agreement or conduct of the parties inconsistent with holding in joint tenancy, the former joint tenants hold the property as tenants in common, each
 with an undivided one-half interest. See 
Minonk
, 95 Ill. 2d at 394; 
Zoglauer
, 229 Ill. App. 3d at 398; 
In re Estate of Brach
, 76 Ill. App. 3d 1050, 1053 (1979).

Plaintiffs' complaint further alleges that Sam fraudulently prevented Ruth from giving effect to her testamentary disposition of the marital residence. The trial court found that plaintiffs' complaint failed to allege sufficient facts in support of their fraud claim. The elements of common law fraud are:

"'(1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in [justifiable] reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.'" 
Adler v. William Blair & Co.
, 271 Ill. App. 3d 117, 125 (1995), quoting 
Gerill Corp. v. Jack L. Hargrove Builders, Inc.
, 128 Ill. 2d 179, 193 (1989). 

A party pleading fraud must allege facts sufficient to establish that its reliance on the alleged misrepresentations was justified, that is, that it had a right to rely upon the statement. 
Adler
, 271 Ill. App. 3d at 125; 
Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.
, 114 Ill. 2d 278, 288 (1986). In determining whether reliance was justified, all of the facts that the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence, are taken into account. 
Adler
, 271 Ill. App. 3d at 125. A complaint alleging fraud must set out the facts with specificity, particularity and certainty under Illinois procedural law governing pleadings. 
Boatwright v. Delott
, 267 Ill. App. 3d 916, 919 (1994). A complaint must clearly and explicitly allege sufficient facts to support a conclusion of fraud, which will not be presumed. Merely characterizing acts as having been done fraudulently is insufficient. 
Boatwright
, 267 Ill. App. 3d at 919.

Plaintiffs maintain that Sam's failure to break the joint tenancy of the home prior to Ruth's death was fraudulent and designed to invalidate her expressed intentions. Sam argues that Ruth's will imposed no duty on him to convey his interest in the residence to Ruth and, short of such an affirmative duty, his inaction cannot be deemed fraudulent nor support the remedy of constructive trust sought by plaintiffs. We agree with Sam that the testamentary disposition by Ruth imposes no duty upon him; however, we disagree that there are not sufficient allegations setting out Sam's status as a fiduciary, and the breach of his duties as such, that would properly plead a cause of action in fraud.

In the present case, the marital residence was owned by Ruth and Sam in joint tenancy. After Ruth's death, Sam took the property as the surviving joint tenant. Ruth's will provided that the property, or the proceeds from its sale, would pass to plaintiffs either upon Sam's sale of the property during his lifetime or upon his death. However, because the property remained in joint tenancy at the time of Ruth's death, Ruth's testamentary disposition of the home was ineffective. 

Sam argues on appeal that Ruth "did not say or do anything to demonstrate that she wanted or intended the residence to pass to her daughter and grandchildren upon her death." Simply put, we find this contention incredible. Sam was a fiduciary to Ruth. In this capacity, he caused Weinberg to draft Ruth's will, which provided: 

"If at any time [the marital residence] is sold with Sam's consent during Sam's lifetime *** the proceeds of such sale shall be distributed to [plaintiffs] in equal shares. Upon Sam's death, if the home has not been sold previously, I hereby give and devise said home to those [plaintiffs] who are living at Sam's death."

The complaint alleges that Ruth signed the will, indicating  her intention that her interest in the residence pass to plaintiffs. There is hardly a more suitable means of evincing one's testamentary intentions. To be sure, no rights are generally conferred upon the putative beneficiary where a bequest or devise is set out in a will and the specific property is not possessed by the decedent at death. 

Sam's will and trust provides: "I do not provide in this [instrument] for [plaintiffs] because my wife will be providing for them in her Will." Therefore, Sam was undeniably aware of Ruth's intent to leave her interest in the residence to plaintiffs. Moreover, as Sam concedes in his appellate brief and as alleged in plaintiffs' complaint, his "motivating goal from the inception of his relationship with Weinberg was to save estate taxes." Sam informed Ruth that it was necessary for her to sign her will in order to save on estate taxes. However, as Sam was also aware, in order to save estate taxes it was necessary that the property held jointly, including the residence, be divided between Ruth and Sam individually. Weinberg advised Sam of the need and manner in which to effectuate such transfer. 

However, with knowledge that such a transfer was necessary, Sam did nothing for over a year until creating his trust and eventually selling the marital residence in 1995.  

These are not the acts of a fiduciary, particularly where Ruth granted Sam power of attorney and depended on Sam to read and explain the contents of her will. 
In short, the complaint sets out facts indicating that Sam acted contrary to Ruth's interests, breached his fiduciary duty and his conduct may therefore be deemed fraudulent. See 
Vermeil v. Jefferson Trust & Savings
, 176 Ill. App. 3d 556, 563 (1988) (where there is a breach of a legal or equitable duty arising out of a fiduciary relationship, a presumption of fraud arises). Accordingly, the trial court erred in dismissing plaintiffs' complaint as to the marital residence.

Plaintiffs further challenge the trial court's finding that count II of their complaint failed to state a cause of action for tortious interference with an expectancy under a will. To plead a cause of action for tortious interference with an expectancy of receiving property pursuant to a will, plaintiffs must allege (1) the existence of an expectancy; (2) defendant's intentional interference with that expectancy; (3) the interference involves tortious conduct such as fraud, duress, or undue influence; (4) a reasonable certainty that the devise would have been received but for defendant's interference; and (5) damages. 
Prosen v. Chowaniec
, 271 Ill. App. 3d 65, 67 (1995). In the present case, we agree with the trial court that plaintiffs have not sufficiently pled a cause of action for tortious interference with an expectancy under a will and affirm the trial court's dismissal of that count.

The relevant inquiry is whether the allegations in plaintiffs' complaint, if true, lead to the conclusion that there is a reasonable certainty that plaintiffs would have received that which they expected under Ruth's will but for Sam's actions. In 
Nemeth v. Banhalmi
, 99 Ill. App. 3d 493, 498 (1981), the court established a high standard for what "reasonable certainty" means in this context:

"A bare possibility may not be [protectible]. But where an intending donor, or testator *** has actually taken steps toward perfecting the *** devise, *** so that if let alone the right of the *** devisee *** will cease to be inchoate and become perfect, we are of the opinion that there is such a status than an action will lie, if it is maliciously and fraudulently destroyed, and the benefit diverted to the person so acting, thus occasioning loss to the person who would have received it." 

In the instant case, plaintiffs have not established their expectancy with "reasonable certainty." In order for plaintiffs to have benefitted under Ruth's will, the property held jointly between Ruth and Sam would have had to have been transferred to Ruth individually. Although Sam, as Ruth's fiduciary, was charged with making the requisite transfer, his failure to do so is not actionable by plaintiffs. Absent the property transfer, plaintiffs stood to gain nothing under Ruth's will, as the property passed to Sam as Ruth's surviving joint tenant. Thus, since plaintiffs' expectancy was dependent on Sam's actions, it would not have, "if let alone," become perfect. Therefore, plaintiffs are unable to set out their expectancy with the requisite degree of certitude recognized in 
Nemeth
.

Although, as we have previously recognized, Sam's failure to transfer the property may have constituted a breach of his fiduciary duty owed to Ruth, Sam owed no similar duty to plaintiffs and plaintiffs are unable to allege any acts of interference directed at them or their interests. Accordingly, we affirm the trial court's dismissal of count II of plaintiffs' complaint.

Plaintiffs next argue that the trial court erred in denying them leave to amend their complaint. When plaintiffs brought their motion to reconsider, they also moved to add a fourth count to their amended complaint alleging Sam's violation of then section 8-315 of the Uniform Commercial Code. 810 ILCS 5/8-315 (West 1992). The trial court denied their motion, and we affirm.

Amendments to pleadings should be liberally allowed to permit parties to fully present their causes of action. 
Jeffrey M. 
Goldberg & Associates v. Collins Tuttle & Co.
, 264 Ill. App. 3d 878, 885 (1994). Four factors are to be considered in determining whether the trial court abused its discretion in refusing an amendment: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. 
Goldberg
, 264 Ill. App. 3d at 885; 
Loyola Academy v. S&S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 273 (1992).

Plaintiffs' motion, brought in conjunction with their motion to reconsider, was not timely, nor did plaintiffs avail themselves of earlier opportunities to add this count to their complaint. Additionally, the proposed amendment had a potentially prejudicial effect on Sam in that it asserted statutory liability. For these reasons, the trial court's refusal was proper.

We now review the trial court's decision granting summary judgment in favor of Weinberg and the firm. Summary judgment is proper when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 1994); 
Addison v. Whittenberg
, 124 Ill. 2d 287, 294 (1988). An order allowing summary judgment will be reversed on appeal if the reviewing court determines that a genuine issue of material fact exists. 
Addison
, 124 Ill. 2d at 294. Our review of a grant of summary judgment is 
de
 
novo
. 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102 (1992).

The trial court entered judgment for the lawyers based on its finding that Ruth was not Weinberg's client and therefore no duty was owed her. In an action for legal malpractice, a plaintiff must prove that the defendant attorney owed plaintiff a duty of care arising from the attorney-client relationship, that the defendant breached that duty, and that, as a proximate result, the plaintiff suffered injury. 
Sexton v. Smith
, 112 Ill. 2d 187 (1986). The existence of a duty presents a question of law to be determined by the trial court. 
Barnes v. Washington
, 56 Ill. 2d 22 (1973). Weinberg and the firm argue that plaintiffs have failed to raise a genuine issue of material fact as to each of these essential elements of plaintiffs' claim. 

The attorney-client relationship is consensual and arises only when both the attorney and the client have consented to its formation. 
Torres v. Divis
, 144 Ill. App. 3d 958 (1986). The client must manifest her authorization that the attorney act on her behalf, and the attorney must indicate his acceptance of the power to act on the client's behalf. 
Torres
, 144 Ill. App. 3d at 962. An attorney's duty to a client is measured by the representation sought by the client and the scope of the authority conferred. 
York v. Stiefel
, 109 Ill. App. 3d 342 (1982). Although, as a general rule, an attorney owes a duty only to one who is a client (
Geaslen v. Berkson, Gorov & Levin, Ltd.
, 220 Ill. App. 3d 600 (1991)), an exception has been recognized when an attorney is hired by a client specifically for the purpose of benefitting a third party. 
Schwartz v. Cortelloni
, No. 80614 (June 19, 1997).

In this case, Ruth's delivery of a power of attorney to Sam, for the specific purpose of estate planning, was explicit authorization that Weinberg act on her behalf. Weinberg accepted the power to act by preparing Ruth's will in consideration of her testamentary wishes. The will prepared by Weinberg and executed by Ruth gives effect to Ruth's desire to benefit plaintiffs. As Sam made clear, he had no such intentions. Weinberg was, therefore, representing Ruth in this capacity, as opposed to Sam, because, as Weinberg himself observed, "it was clear from day one that Sam's estate was going in one direction and Ruth's in another." By this observation, Weinberg recognizes that his representation not only encompassed both Ruth and Sam, but foreshadows his subsequent attempts to reconcile the divergent paths of their estates. We find, therefore, that plaintiffs have established an attorney-client relationship between Ruth and Weinberg. In light of this relationship, Weinberg owed Ruth a duty of care as a matter of law. 
McLane v. Russell
, 131 Ill. 2d 509, 515 (1989). 

Plaintiffs allege he breached this duty in failing to advise Ruth of ways to benefit plaintiffs through 
inter
 
vivos
 conveyances, failing to exercise due care in ascertaining Ruth's property interests and assisting in the development and execution of Ruth's estate plan and failing to maintain a "normal" client-lawyer relationship notwithstanding Ruth's health. While we express no opinion as to whether Weinberg committed a breach, we do find that plaintiffs' complaint and the record raise an issue of material fact on the question of whether there was a breach of Weinberg's duty. In this regard, it is interesting to note the conflicting deposition testimony of Sam and Weinberg on such key issues as whether Weinberg asked to speak to Ruth and whether Weinberg advised Sam that it was necessary to sever the joint tenancy. Because questions of fact exist on the issue of Weinberg's performance, summary judgment was inappropriate.

We further find that Ruth sufficiently alleged injuries as a result of any breach. As recognized by both Weinberg and Sam, a primary purpose behind Weinberg's representation was to save estate taxes. This was not accomplished. Moreover, Weinberg drafted a will that reflected Ruth's intentions to benefit plaintiffs, but these intentions were not realized. A question of fact exists as to whether these shortcomings were a result of Weinberg's breach or Sam's, independent, breach of his fiduciary obligations.

Additionally, plaintiffs' complaint sufficiently alleges a third-party-beneficiary action against Weinberg. Generally, an attorney owes a professional obligation only to his client, not to nonclient third parties. 
Jewish Hospital v. Boatmen's National Bank
, 261 Ill. App. 3d 750, 759 (1994); 
McLane
, 131 Ill. 2d at 515. However, the supreme court has established that, under limited circumstances, a nonclient may maintain a negligence action against an attorney. 
Jewish Hospital
, 261 Ill. App. 3d at 759; 
Ogle v. Fuiten
, 102 Ill. 2d 356 (1984); 
Pelham v. Griesheimer
, 92 Ill. 2d 13 (1982). Regardless of which theory of recovery is pled, nonclient plaintiffs seeking to recover for malpractice must demonstrate that they are in the nature of third-party intended beneficiaries of the relationship between the attorney and client. 
Jewish Hospital
, 261 Ill. App. 3d at 759. For a nonclient to succeed, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party. 
Jewish Hospital
, 261 Ill. App. 3d at 759; 
Pelham
, 92 Ill. 2d at 21. Our supreme court has strongly embraced the concept that third-party-beneficiary status should be easier to establish when the scope of the attorney's representation involves matters that are nonadversarial, such as in the drafting of a will. 
Jewish Hospital
, 261 Ill. App. 3d at 761; 
Ogle
, 102 Ill. 2d at 363; 
Pelham
, 92 Ill. 2d at 22.

Plaintiffs' complaint alleges that they "are beneficiaries under Ruth's will and were intended third-party beneficiaries of the duties owed to Ruth by Weinberg and [the firm]." The supreme court has applied third-party-beneficiary status to contingent beneficiaries under a will (
Ogle
, 102 Ill. 2d 356) and to beneficiaries under a will where the devise failed. 
McLane
, 131 Ill. 2d 509. Plaintiffs meet these criteria. See 
Jewish Hospital
, 261 Ill. App. 3d at 760 (distinguishing 
York v. Stiefel
, 99 Ill. 2d 312 (1983)). 

We next consider the trial court's dismissal of Noyes. Plaintiffs argue that Noyes is a necessary party pursuant to section 17-103 of the Code of Civil Procedure (735 ILCS 5/17-103 (West 1992)), section 8-112 of the Uniform Commercial Code (810 ILCS 5/8-112(c) (West 1992)) and section 2-405 of the Code of Civil Procedure (735 ILCS 5/2-405(a) (West 1992)). The basis for joinder under all three sections is that the party to be named has an interest in the controversy. We agree with the trial court that Noyes has no such interest and therefore affirm its dismissal. Moreover, as plaintiffs concede, the trial court's personal jurisdiction over Sam is sufficient to allow the trial court to fully adjudicate Sam's interest in the personal property at issue.

In summary then, we affirm the trial court's dismissal of Noyes and reverse and remand the trial court's dismissal of Sam and entry of summary judgment for Weinberg and the firm.

Affirmed in part; reversed in part; and remanded.  

THEIS, J., and QUINN, J., concur.