22 August 2000

No.  2--99--0675 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

DAVID D. ALBEE and LYNN G.     ) Appeal from the Circuit Court

ALBEE,                         ) of Jo Daviess County.

                               )

Plaintiffs-Appellees and  )

Cross-Appellants,         )

                               )

v.                             ) No. 97--TX--28

                               )

CAROL A. SOAT, Jo Daviess      )

County Treasurer and           )

ex officio
 County Collector,   )

                               ) Honorable

Defendant-Appellant and   ) William A. Kelly,

Cross-Appellee.           ) Judge, Presiding.

JUSTICE GALASSO delivered the opinion of the court:

In 1995, plaintiffs, David and Lynn Albee, purchased a parcel of real estate commonly known as 320 Elk Street, Galena, Illinois. In the 1995 quadrennial assessment, the subject property was assessed at $41,673.  For the 1996 tax year, the assessed valuation of the subject property was increased to $65,162.  Plaintiffs initially filed an objection with the Jo Daviess County Board of Review, which subsequently denied the objection.  On November 12,  1997, plaintiffs filed a 1996 tax objection complaint against Carol A. Soat, Jo Daviess County treasurer and 
ex officio
 county collector.  Therein, they alleged that the 1996 assessment was excessive and incorrect, that the valuation was made without statutory authority, and that Jo Daviess County had "wholly failed, neglected and/or refused to prepare and maintain tax maps contrary to and in violation of 35 ILCS 200/9--35."  Plaintiffs’ complaint sought a determination that the 1996 assessment and the 1996 property taxes were "excessive, incorrect, illegal and void."  The complaint further sought a determination of the proper amount of the 1996 assessment and the appropriate amount of property taxes for the 1996 tax year.  Finally, plaintiffs asked for an order directing defendant to refund any taxes "adjudged by the Court to be excessive, illegal, incorrect and void."

Included in discovery were defendant’s answers to plaintiffs' requests to admit.  Therein, defendant admitted that the 1995 assessment of plaintiffs’ property was correct and that plaintiffs had not made any alterations or improvements to the property from 1995 to 1996.  Plaintiffs filed a motion for summary judgment, which was fully briefed, and the trial court conducted a hearing on the motion.

At the conclusion of the hearing, the trial court granted plaintiffs' motion for summary judgment.  In so holding, the trial court stated:

"[The 1995] assessed valuation of the property was correct. *** Based on that admission when there aren’t any alterations or additions what’s [
sic
] we’re looking at is a situation where, as you point out [defense counsel], the court has the authority to make those changes which need to be made in the interest of justice.  But if the 1995 assessment is correct, and there’s been no changes [to the property], then assuming that it was correct in 1995 and it was just, I think we’re stymied to pull it out of the air, and I’m going to grant the motion for summary judgment."

Defendant subsequently filed a timely notice of appeal, and plaintiffs filed a timely notice of cross-appeal.

On appeal, defendant argues that she had the authority to reassess plaintiffs' property in a nonquadrennial year and that, accordingly, the trial court’s granting of plaintiffs’ motion for summary judgment was improper.  On cross-appeal, plaintiffs maintain that the failure of Jo Daviess County to maintain tax maps vitiates the entire property tax assessed, levied, and extended against the subject property.

Initially, we note that the appropriate standard of review was set out by this court in 
Rivas v. Westfield Homes of Illinois, Inc.
, 295 Ill. App. 3d 304, 307-08 (1998):

"Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with affidavits, if any, disclose that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  [Citation.]  While plaintiffs need not prove their cases at the summary judgment stage, they must come forward with some facts that would arguably entitle them to judgment.  [Citation.]  Indeed, summary judgment is a drastic measure and should be granted only if the movant’s right to judgment is clear and free from doubt.  [Citation.]  Therefore, where a reasonable person can draw divergent inferences from undisputed facts, summary judgment should be denied.  [Citation.]  Finally, our review of the trial court’s entry of summary judgment is 
de
 
novo
."

We first address defendant’s argument that the trial court erred in granting plaintiffs' motion for summary judgment. Specifically, defendant argues that it had statutory authority to reassess plaintiffs' property in a nonquadrennial year.  Plaintiffs respond that, under the facts of this case, defendant had no authority to reassess their property.

The Illinois Property Tax Code (Code) (35 ILCS 200/1--1 
et
 
seq
. (West 1994)) provides in pertinent part:

"[I]n counties having the township form of government and with less than 3,000,000 inhabitants, the general assessment years shall be 1995 and every fourth year thereafter."  35 ILCS 200/9--215 (West 1994). 

"On or before June 1 in each general assessment year in all counties with less than 3,000,000 inhabitants, *** the assessor *** shall actually view and determine as near as practicable the value of each property listed for taxation as of January 1 of that year *** and assess the property at 33 1/3% of its fair cash value ***."  35 ILCS 200/9--155 (West 1994).

"The assessment, as modified or equalized or changed as provided by law, shall be the assessment upon which taxes shall be levied and extended during the general assessment period for which the assessment is made ***."  35 ILCS 200/9--

95 (West 1994).

"The chief county assessment officer of any county with less than 3,000,000 inhabitants *** may in any year revise and correct an assessment as appears to be just."  35 ILCS 200/9--

75 (West 1994).

Essentially, defendant maintains that the above-cited language permitted it to reassess plaintiffs' property between 1995, the quadrennial year, and 1996, a nonquadrennial year.  If anything, this statutory language thoroughly undercuts defendant’s position. Section 9--215 indicates that in counties of less than 3 million,  the quadrennial assessments will start in 1995 and be in every fourth year thereafter.  Section 9--155 of the Code merely states that, at the beginning of the quadrennial year, the assessor will view the property, determine its value, and assess the property at 33⅓% of its fair cash value.  This section says nothing about an assessor going through this process during a nonquadrennial year.

Section 9--75 permits an assessor to "revise and correct an assessment as appears to be just."  35 ILCS 200/9--75 (West 1994). The assessor does not have the authority to revise 
or
 correct.  If the legislature so intended it would have so indicated.  The circumstances of the instant appeal do not require a revision and correction of the assessment to cure an "unjust" assessment in 1995.  The record shows that the reason for the reassessment in 1996 was not due to an incorrect assessment in the 1995 quadrennial year or to changes made to the property.

However, there is support for the defendant's position found in other sections of the Code, which were not cited to the trial court or this court.  Section 9--210 provides in pertinent part:

"Equalization by chief county assessment officer; counties of less than 3,000,000.  The chief county assessment officer in a county with less than 3,000,000 inhabitants shall act as an equalizing authority for each county in which he or she serves.  The officer shall examine the assessments in the county and shall equalize the assessments by increasing or reducing the entire assessment of property in the county or any area therein or of any class of property, so that the assessments will be at 33⅓% of fair cash value.  The equalization process and analysis described in this Section shall apply to all property except farm and coal properties assessed under Sections 10--110 through 10--140 and 10--170 through 10--200.

For each township or assessment district in the county, the supervisor of assessments shall annually determine the percentage relationship between the estimated 33⅓% of the fair cash value of the property and the assessed valuations at which the property is listed for each township, multi-township or assessment district.  To make this analysis, he or she shall use property transfers, property appraisals, and other means as he or she deems proper and reasonable.

With the ratio determined for each township or assessment district, the supervisor of assessments shall then determine the percentage to be added to or deducted from the aggregate assessments in each township or assessment district, other than property assessed under Sections 10--110 through 10--140 and 10--170 through 10--200, in order to produce a ratio of assessed value to fair cash value of 33⅓%.  That percentage shall be issued as an equalization factor for each township or assessment district within each county served by the chief county assessment officer.  The assessment officer shall then change the assessment of each parcel of property by application of the equalization factor."  35 ILCS 200/9--210 (West 1994).

This section mandates that the assessor shall annually determine the percentage relationship between 33⅓% of the fair cash value of the property and the assessed valuations for each township, multitownship, or district.

The Department of Revenue may order a reassessment by the local assessing officers of a given year of all or any class of property in the county or assessing district.  35 ILCS 200/13--10 (West 1994).  Boards of review are required to apply the same equalization process based upon sales and other transfers (35 ILCS 200/16--65 (West 1994)) as is the Department of Revenue (35 ILCS 200/17--5 (West 1994)).  The Department of Revenue is required to 
annually
 compile sales ratio studies to determine the quality of local assessments.  Based upon this study, the Department of Revenue may apply an equalization factor to all property in a county or assessment district where the Department finds the valuation to be more or less than 33⅓% of the fair cash value.  35 ILCS 200/17--15, 17--20, 17--25 (West 1994).  The county clerk, 
each year
, is then required to add or deduct from the assessed value of property by applying the equalization factor.  35 ILCS 200/17--30 (West 1994).  None of the sections cited herein contain language that limits their application to quadrennial years.

It is clear that the adoption of this Code is an attempt to equalize the method of valuation of real estate for tax purposes so that all persons owning property within a specific taxing body's boundaries will pay the same proportionate share of taxes levied to operate the taxing body.   Plaintiffs' position that reassessments are limited to quadrennial years ignores the annual process established by the legislature to accomplish equalization.

We cannot determine from the record whether defendant complied with section 9--210 of the Code.  Pursuant thereto, the assessor does have the authority to annually change the quadrennial assessment to achieve a 33⅓% fair cash value assessment; however, when doing so the new ratio must be applied uniformly to the entire county, township, or district and not to just some of the properties therein.  Based upon the record, there appears to be a question of fact as to whether the percentage increase was applied to the entire township, to an area in the township, or to just certain properties in the township.  In any event, defendant did raise a question of fact relative to compliance with section 9--

210.  An order allowing summary judgment will be reversed on appeal if the reviewing court determines that a genuine issue of material fact exists.  
Simon v. Wilson
, 291 Ill. App. 3d 495, 509 (1997).  Accordingly, the order granting plaintiffs' motion for summary judgment is reversed and the cause remanded.

Finally, we address plaintiffs' cross-appeal, wherein they contend that the failure of Jo Daviess County to prepare and maintain tax maps vitiates the entire property tax "assessed, levied and extended" against the subject parcel of property.  Our perusal of the record indicates that, despite plaintiffs' strenuous efforts, the trial court did not make a ruling on this matter.  As a result, this cross-appeal is not properly before us.  We note that if, upon remand, the trial court finds that defendant had the authority to reassess plaintiffs' property in a nonquadrennial year, then it will have to address the issue raised by plaintiffs regarding the tax maps.

For the reasons stated above, the judgment of the circuit court of Jo Daviess County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BOWMAN, P.J., and RAPP, J., concur.