THIRD DIVISION
AUGUST 20, 2008

1-05-1299

| | | |
|---|---|---|
| SHARON A. WILDEY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 L 15059 |
| | ) | |
| MARY PAULSEN, | ) | Honorable |
| | ) | Randye Kogan, |
| Defendant-Appellee and Cross-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the modified opinion of the court:

The plaintiff, Sharon Wildey, filed a lawsuit for legal malpractice against the defendant, Mary Paulsen, in the circuit court of Cook County. Wildey argued that Paulsen's legal malpractice caused the reversal of a $178,000 judgment in favor of Wildey and against Wildey's former fiancé. The trial court found that Paulsen committed legal malpractice and was liable to Wildey for damages in the amount of $100. Wildey appealed and Paulsen cross-appealed the trial court's ruling. For the following reasons, we affirm the judgment of the circuit court.

PROCEDURAL BACKGROUND

Given the unusual procedural stance and lengthy history of this case, upon receiving a petition for rehearing filed by the defendant, Paulsen, and a response filed by the plaintiff, Wildey, a recitation of certain aspects of the case is appropriately included in describing the background of this matter upon issuance of this court's modified opinion.

The plaintiff, Sharon Wildey an attorney, originally filed a complaint in the circuit court of Cook County against her former fiancé, Richard Springs, claiming that he violated the Illinois

Breach of Promise Act (the Act) (740 ILCS 15/1 (West 1992)) in April, 1992. The defendant, Mary Paulsen an attorney and personal friend of Wildey, appeared on behalf of Wildey as attorney of record. The case was subsequently removed to federal court on the motion of Springs. Paulsen did not represent Wildey in the federal court proceedings. The case went to trial and a federal jury awarded Wildey $178,000. The trial judge later remitted that award to $118,000. Springs appealed the verdict to the Court of Appeals for the Seventh Circuit, and the judgment in favor of Wildey was reversed.[1] Wildey then filed a lawsuit in the circuit court of Cook County against Paulsen for legal malpractice. At the conclusion of the trial in the circuit court, the court found that Paulsen was liable to Wildey for legal malpractice and awarded Wildey $100 in damages. Wildey appealed and Paulsen cross-appealed the judgment of the circuit court of Cook County. After filing notices of appeal, both parties requested multiple extensions of time in which to file their briefs in this court. After the parties filed their respective briefs and the case became ready for review, the appellate court struck Wildey's brief *sua sponte* because it was wholly noncompliant with Illinois Supreme Court Rules 341(h) and 342(a) (210 Ill. 2d Rs. 341(h), 342(a)). Wildey was given 28 days to file a compliant brief. After requesting an additional time extension, Wildey refiled a marginally acceptable brief. The refiled brief contained a paucity of facts and was not supported by an appendix. Wildey did not seek leave of court to allow the appendix previously filed with the stricken brief to stand with the refiled brief. Upon this court's own motion, we permitted the previously filed appendix to Wildey's stricken brief to stand with the refiled brief. Paulsen chose to stand on her previously filed brief.

---

[1] The Seventh Circuit's opinion in that appeal can be found at <u>Wildey v. Springs</u>, 47 F.3d 1475 (7th Cir. 1995).

Following these delays, this court took the matter under advisement and issued a written opinion. Paulsen filed a petition for rehearing following this court's issuance of its written opinion. Wildey filed a response in which she takes this court to task for "spen[ding] little time analyzing the matter." Paulsen raised facts in her petition for rehearing that were never included in her original brief or the record. We also note that Paulsen did not seek to amend or supplement her brief following the refiling of Wildey's brief pursuant to this court's order. And as noted, Wildey's refiled brief contained scant facts and no appendix. Wildey's response to Paulsen's petition for rehearing, like Paulsen's petition, contained many new facts that were never before this court in her original brief, her refiled brief, or the record. Thus, it became apparent in reviewing the petition for rehearing that both parties had omitted certain facts from their briefs which had been filed in support of their respective arguments on appeal. They were both attempting to make arguments, for the first time, based on facts that were not part of their original briefs and were never before this court. This is astounding considering that the parties were given an opportunity to refile their briefs in order to comply with Supreme Court Rules 341(h) and 342(a) (210 Ill. 2d Rs. 341(h), 342(a)). Thus, any new facts and arguments raised by the parties in the petition for rehearing or the response were not considered by this court in issuing this modified opinion. See 210 Ill. 2d R. 341(h)(7) (points not argued are waived and shall not be raised in a petition for rehearing).

### FACTUAL BACKGROUND

The substantive facts adduced from the record are as follows. The plaintiff, Sharon Wildey, an attorney licensed to practice law in Illinois, was engaged to marry Richard Springs. It appears that Springs was a resident of a state other than Illinois. Neither the briefs nor the record is specific on

this point, but it can be inferred from the procedural history of the case. On or about April 27, 1992, Springs broke the engagement. Wildey subsequently decided to file a lawsuit against Springs under the Act (740 ILCS 15/1 *et seq.* (West 1992)).

Wildey discussed the matter and sought the advice and counsel of the defendant, attorney Mary Paulsen. As mentioned, Paulsen and Wildey were friends. Wildey and Paulsen first met for lunch and then at Paulsen's law office to discuss the facts and the proposed lawsuit. It is unclear from the record exactly when Wildey decided to proceed with a lawsuit against Springs. But it is clear that by the time Wildey and Paulsen met in Paulsen's law office, Wildey had decided to sue Springs under the Act. Paulsen's law partner, Beth Havel, was present for at least one meeting between Wildey and Paulsen in Paulsen's law office. Wildey and Paulsen disagree about whether it was at that meeting in the law office that Paulsen agreed to represent Wildey.

On June 12, 1992, Wildey drafted and sent a letter to Springs pursuant to the Act, declaring her intent to file suit against him. Wildey sent the letter to Springs to satisfy the notice requirement of the Act. Both Wildey and Paulsen later agreed that the letter did not comply with the presuit notice requirement of the Act. The Act required that the notice of intent to sue must include the date on which the parties became engaged. Wildey's letter to Springs did not contain the date of engagement. In the letter to Springs, Wildey referred to Paulsen as her retained counsel. On June 18, 1992, Wildey faxed Paulsen a copy of the letter that she had already sent to Springs. Both parties agree that the period in which proper notice had to be sent to Springs pursuant to the Act ended on July 28, 1992.

On June 23, 1992, Wildey and Paulsen met in Paulsen's law office once again to discuss the

case. Wildey completed a client interview sheet at that meeting. Paulsen claims that it was at this meeting that she informed Wildey that the letter which had already been sent to Springs did not comply with the notice requirement of the Act. Wildey claims that Paulsen told her that the letter was "fine." Neither Wildey nor Paulsen sent Springs a corrected letter that complied with the notice requirement of the Act. On July 16, 1992, Paulsen spent 1 ½ hours working on the complaint to be filed against Springs. On September 11, 1992, Wildey completed a retainer agreement with Paulsen. The agreement set forth that Wildey was to pay Paulsen $1,500 for legal representation for the lawsuit against Springs. Paulsen later testified in her deposition that she never received any payment from Wildey for any representation related to the lawsuit.

On October 27, 1992, Wildey filed a complaint under the Act against Springs in the circuit court of Cook County. Paulsen was listed on the complaint as Wildey's attorney of record. As mentioned in the procedural history, recited above, the case was subsequently removed to federal court by Springs and proceeded to trial by jury. The federal court jury awarded Wildey $178,000, which the trial judge remitted to $118,000[2]. Springs appealed the verdict asserting that the presuit notice letter sent to him by Wildey did not comply with the mandatory notice requirement of the Act. The Court of Appeals for the Seventh Circuit reversed the verdict that had been entered in favor of Wildey. The decision held that Wildey's presuit notice letter to Springs did not meet the statutory notice requirement of the Act. See Wildey v. Springs, 47 F.3d 1475, 1484 (7th Cir. 1995). The reversal of the verdict concluded the case in federal court.

---

[2]The record before this court on this appeal does not contain a reason for the remittitur.

On July 5, 1995, Wildey returned to the state court with the matter. She filed a complaint in the circuit court of Cook County alleging legal malpractice by Paulsen. In that complaint she also sought to recover damages for pain and suffering. Paulsen filed a motion for summary judgment in response to Wildey's complaint. She argued that Wildey should only be able to recover actual damages, if any. The trial court agreed, indicating that Wildey could only recover actual damages, such as the cost expended for the wedding dress, reception, and invitations. The court explained that under the Act, a plaintiff can only recover actual damages and cannot recover for pain and suffering as Wildey sought to do. Upon motions of the parties and prior to trial, the trial court certified two questions for interlocutory appeal to the Illinois Appellate Court pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). This court declined to hear the interlocutory appeal and the matter was returned to the trial court.

Upon return to the trial court, the case was subsequently assigned to a different judge and proceeded to a bench trial. Following the bench trial, the judge found that Wildey established sufficient facts to prove that an attorney-client relationship existed between Wildey and Paulsen. The judge also found that the attorney-client relationship was formed prior to July 28, 1992. The judge explained that even if the attorney-client relationship was formed merely so that Wildey would "appear" to be represented by counsel, the retainer agreement should have reflected the limitation of representation and it did not. The retainer agreement simply established an attorney-client relationship with no limitation.

The court also found that the notice letter sent to Springs by Wildey on June 12, 1992, was insufficient to comply with the notice requirement of the Act. Paulsen, as the attorney for Wildey,

failed to remedy the inadequacy of the notice before July 28, 1992, the last date on which notice could be given to Springs under the Act. As to damages, the trial court held that Wildey could only recover for actual damages which she incurred as a result of Paulsen's legal malpractice. The trial court pointed out that during the bench trial, the only evidence of allowable damages which Wildey presented to the court, was the amount which she spent for the alteration of her wedding dress. That amount was $100. The trial court accepted Wildey's oral testimony regarding the expenditure. The record is devoid of any other evidence whatsoever of damages incurred by Wildey which would be recoverable under the Act. At the conclusion of the trial, the trial court found that Paulsen had committed legal malpractice and that Wildey was entitled to actual damages established by the evidence, in the amount of $100. Wildey appealed the trial court's ruling and Paulsen cross-appealed.

## ANALYSIS

On appeal, Wildey argues that the trial court in this case should have awarded her the amount of the federal jury verdict which was $178,000, or in the alternative $118,000 which was the remitted amount. She argues that this is the value of the claim which was lost because of Paulsen's legal malpractice. Wildey also contends that she is entitled to recover damages for pain and suffering. She claims that she has suffered actual damages as a result of the pain and suffering caused by Paulsen's legal malpractice and is therefore entitled to damages for that. On cross-appeal, Paulsen argues that there was no attorney-client relationship between Wildey and herself. In the alternative, she asserts that her representation was limited to ministerial functions only. Paulsen also contends that Wildey is not entitled to damages for pain and suffering because such damages are outside the

scope of the Act.

We must first determine whether the trial court's ruling is against the manifest weight of the evidence. General Motors Acceptance Corp. v. Stoval, 374 Ill. App. 3d 1064, 1072, 872 N.E.2d 91, 97-98 (2007). "A judgment is against the manifest weight of the evidence only when an opposite conclusion ' "is apparent or when [the trial court's] findings appear to be unreasonable, arbitrary, or not based on evidence." ' " General Motors Acceptance Corp., 374 Ill. App. 3d at 1071, 872 N.E.2d at 98, quoting Avenaim v. Lubecke, 347 Ill. App. 3d 855, 861, 807 N.E.2d 1068 (2004), quoting Judgment Services Corp. v. Sullivan, 321 Ill. App. 3d 151, 154, 746 N.E.2d 827, 830-31 (2001).

For Wildey to be successful in her legal malpractice claim against Paulsen, she had to prove: (1) the existence of an attorney-client relationship that established a duty on the part of Paulsen; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages. Lopez v. Clifford Law Offices, P.C., 362 Ill. App. 3d 969, 974-75, 841 N.E.2d 465, 470-71 (2005). Wildey had to prove that in the underlying action she would have recovered damages owed to her by Springs absent Paulsen's legal malpractice. First National Bank of LaGrange v. Lowrey, 375 Ill. App. 3d 181, 200, 872 N.E.2d 447, 467- 68 (2007). In essence, Wildey had to prove a case within a case.

We now address the question of whether an attorney-client relationship existed between Wildey and Paulsen. The attorney-client relationship is a consensual relationship that forms when the attorney and the client both consent to its formation. Simon v. Wilson, 291 Ill. App. 3d. 495, 509, 684 N.E.2d 791, 801 (1997). The attorney must indicate an acceptance of the authority to work

8

on behalf of the client, and the client must authorize the attorney to work on his behalf. <u>Simon</u>, 291 Ill. App. 3d. at 509, 684 N.E.2d at 801. "An attorney's duty to a client is measured by the representation sought by the client and the scope of the authority conferred." <u>Simon</u>, 291 Ill. App. 3d. at 509, 684 N.E.2d at 801.

In this case, Wildey sought Paulsen's advice regarding her legal options with respect to Wildey's broken engagement with Springs. Wildey and Paulsen met multiple times to discuss the lawsuit which Wildey intended to file against Springs. Wildey completed a client interview form on one of her visits to Paulsen's law office. It appears that discussions about the impending lawsuit took place over a period of time. The parties agreed that the letter to Springs which alerted him to the impending lawsuit was drafted by Wildey. It is that letter which later became the basis for Wildey's legal malpractice action against Paulsen. The parties agree that Wildey advised Paulsen that she had drafted and sent the letter to Springs. Prior to July 28, 1992, Wildey faxed a copy of the letter to Paulsen.

The Act requires that in order to meet the notice requirement, the letter should have contained the date on which the engagement between Wildey and Springs commenced. See 740 ILCS 15/4 (West 1992). Wildey's letter to Springs did not contain the required date. Wildey and Paulsen disagree regarding what each said or did regarding any follow-up on the letter after it was faxed to Paulsen. They agree however that the necessary date of the engagement was missing from the letter. Paulsen claims that she told Wildey that the letter did not comply with the notice requirement of the Act. Wildey claims that Paulsen told her that the letter was "fine." All of this activity took place prior to July 28, 1992, the date on which the notice period expired. There was clearly time for

9

Paulsen to remedy the defect before the notice period expired.

Paulsen does not dispute that the letter which Wildey sent to Springs identified Paulsen as her lawyer. The complaint that was subsequently filed against Springs also identified Paulsen as Wildey's lawyer. Indeed, Paulsen billed Wildey for at least 1 ½ hours of time spent working on the complaint to be filed against Springs. The trial court held that the attorney-client relationship between Wildey and Paulsen formed prior to July 28, 1992, the date when the period to send proper notice to Springs expired. The court reasoned that Wildey and Paulsen had multiple meetings prior to July 28, 1992, that formed the attorney-client relationship. During this time, Wildey and Paulsen discussed the case numerous times. Wildey filed the complaint against Springs with Paulsen named as her lawyer, and Paulsen billed Wildey for work on the complaint. The court explained that these acts were sufficient to establish that Paulsen represented Wildey in an attorney-client capacity. We agree.

Paulsen's argument that her designation as Wildey's attorney was essentially a ruse intended to telegraph to Springs that the situation was serious is unavailing. Paulsen claims that she was only to "appear" as Wildey's attorney to demonstrate to Springs Wildey's intent to pursue the lawsuit. She claims that her representation of Wildey was to be only ministerial. However, Paulsen's own account of her work with Wildey goes beyond the limited capacity which she now claims. Paulsen worked on the complaint, billed for that work, and met with Wildey multiple times to discuss the case and to formulate a strategy. Thus Paulsen's own behavior places her outside a purely "ministerial capacity." Paulsen's argument that she never received any payment from Wildey for the time which she spent working on the case does nothing to support her denial of an attorney-client

10

relationship. Additionally, even if Paulsen represented Wildey in the limited capacity that she now claims, Paulsen still had a duty to provide competent representation and advice within the parameters of that limited capacity. Although an attorney can limit his or her representation through a retainer agreement, an attorney still has a duty to provide competent representation and sound legal advice. Keef v. Widuch, 321 Ill. App. 3d 571, 574-76, 747 N.E.2d 992, 998-99 (2001). By her own admission, Paulsen knew that the notice letter sent by Wildey to Springs did not comply with the Act; yet, she did nothing to remedy the defect. Instead, she continued to work on the complaint and appeared as Wildey's attorney of record when the complaint was filed in the circuit court of Cook County. We believe that a reasonable attorney that continued to work on a case which he or she knows to have a defective notice would have cured the defect prior to the complaint being filed.

Paulsen's arguments when carefully analyzed, essentially concedes the existence of the attorney-client relationship. Nevertheless, she suggests that her liability to Wildey was negated by Wildey personally sending the letter to Springs prior to what Paulsen believes is the commencement of the attorney-client relationship, if any. Paulsen also argues that any such relationship, if it existed, was formed after the July 28, 1992 date on which the notice period expired. The trial court found that the attorney-client relationship predated July 28, 1992. We see nothing in the record, argument or established case law that would require us to disturb that finding. Thus, we are unpersuaded by Paulsen's argument.

Although Wildey, also an attorney, sent the notice letter to Springs herself, this did not negate Paulsen's responsibility to provide competent legal representation. Paulsen, as Wildey's attorney, had the authority and obligation to cure the defect. Nothing in the record suggests that Wildey

11

prohibited or otherwise prevented Paulsen from doing so. It was therefore negligent for Paulsen not to cure the defect before the notice period expired. Thus, the trial court's holding was not against the manifest weight of the evidence.

Next, Wildey argues that she is entitled to the amount of damages awarded by the jury in the earlier federal trial. She claims that she is entitled to $178,000 or in the alternative $118,000. She also claims that she is entitled to recover damages for pain and suffering under the Act. She argues that pain and suffering is an actual damage and is recoverable under the Act.

We note that the trial court prevented Wildey from introducing any evidence of damages resulting from pain and suffering. We agree with the trial court that Wildey's recovery is limited to actual damages. Sections 2 and 3 of the Act state:

> "§ 2. The damages to be recovered in any action for breach of promise or agreement to marry shall be limited to the *actual damages* sustained as a result of the injury complained of.
>
> § 3. No punitive, exemplary, vindictive or aggravated damages shall be allowed in any action for breach of promise or agreement to marry." (Emphasis added.) 740 ILCS 15/2, 3 (West 1994).

Damages for pain and suffering are not allowed under the Act. See generally White v. Prenzler, 19 Ill. App. 2d 231, 153 N.E.2d 477 (1958). Thus, the trial court's ruling on this point was proper.

As discussed, in a legal malpractice action, the plaintiff must "essentially prove a 'case within a case.' " First National Bank of LaGrange v. Lowrey, 375 Ill. App. 3d 181, 200, 872 N.E.2d 447,

467- 68 (2007). The plaintiff must prove the underlying action and the damages owed by the third party absent the legal malpractice. First National Bank of LaGrange, 375 Ill. App. 3d at 200, 872 N.E.2d at 467- 68. Damages are not presumed, and the plaintiff must prove the damages she suffered as a result of the legal malpractice. First National Bank of LaGrange, 375 Ill. App. 3d at 200, 872 N.E.2d at 467-68.

There is no evidence in the record of Wildey having established that she suffered recoverable damages other than that awarded. One can conclude from the evidence that Wildey was angry at Springs and later at Paulsen. Indeed she may very well have been very distressed by the situation. However, in order to recover damages she needed to provide evidence sufficient to satisfy the legal requirement of her claim. Specifically, she needed to establish that she suffered *actual damages* since the Act only provides for recovery of actual damages. "Actual damages [is] an amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." Black's Law Dictionary 394 (7th ed. 1997). Wildey clearly failed to meet that burden. The record reveals that Wildey testified that Springs paid for the purchase of her wedding dress. Wildey's expense for the dress was limited to $100 that she spent on alterations. There was no supporting evidence other than her testimony. Although this was a close call, the trial court found Wildey to be credible and accepted her testimony on this point. There was no testimony regarding other recoverable expenditures related to the wedding that had been incurred by Wildey. It is the plaintiff's burden to establish any damages that were occasioned by the breach. Thus Wildey could and should have provided evidence of such damages if they existed. The trial court correctly awarded her the only damages to which she was entitled based on the evidence and as allowed by

the Act.

We reject Wildey's argument that she is entitled to the amount of the original federal jury verdict. As the trial court in the instant case correctly held, the federal jury verdict was reversed on appeal and therefore no longer exists. Wildey erroneously relies on Gruse v. Belline, 138 Ill. App. 3d 689, 486 N.E.2d 398 (1985), in arguing that the judgment is valid evidence of her damages. Gruse is readily distinguishable. In that case, the plaintiff had a *valid* judgment entered against him because of the defendant's malpractice. We also note that the Court of Appeals for the Seventh Circuit relied upon the defective notice in overturning the jury's verdict in the federal lawsuit brought by Wildey against Springs. Thus, the court did not reach the issue of whether Wildey proved that she was entitled to the damages awarded by the jury. To the extent that the damages were based on the Act, Wildey would still be required to prove her entitlement to damages as outlined in the Act. If she submitted such evidence in the federal trial she did not do so when she instituted the legal malpractice case against Paulsen in the circuit court of Cook County after losing in federal court.

Thus, even if we accept Wildey's suggestion that the federal lawsuit constitutes the underlying lawsuit for purposes of the "case within a case" rule, it does not support her argument because no valid judgment remains in the federal lawsuit filed by Wildey against Springs. Once a judgment is reversed on appeal, it no longer exists. It is specious for Wildey to argue that because the federal jury once awarded $178,000, regardless of the reversal, the verdict still exists for purposes of the instant legal malpractice lawsuit filed in a completely different court system. Accordingly, we reject this contention.

14

The trial court's ruling was clearly supported by the law and the evidence as we have discussed. Accordingly, Paulsen's cross-appeal also fails and we need not address those arguments. The petition for rehearing filed by Paulsen prior to the modification of this opinion is hereby denied.

For all of the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

QUINN, P.J., and THEIS, J., concur.