2016 IL App (1st) 141984

SECOND DIVISION
April 26, 2016

No. 1-14-1984

| | | |
|---|---|---|
| HORACE FOX, Trustee in Bankruptcy for Miriam Draiman, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09 L 4040 |
| GLENN SEIDEN, GLENN SEIDEN AND ASSOCIATES, P.C., and AZULAY HORN AND SEIDEN, LLC, | ) ) ) ) | Honorable Joan E. Powell and Honorable Eileen O'Neill Burke |
| Defendants-Appellants. | ) | Judges Presiding |

JUSTICE SIMON delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion.

## OPINION

¶ 1    This is a legal malpractice case in which the trial court entered summary judgment in favor of the plaintiff.   The defendants appeal, principally arguing that they were the ones entitled to summary judgment.   We conclude that the defendants are not entitled to judgment as a matter of law, but neither is the plaintiff.   Because the error in representation alleged by the plaintiff does not fall within the "common knowledge exception," expert testimony is required to establish the standard of care.   A trier of fact must then determine whether the defendants complied with that standard—whether they acted with the skill and care ordinarily used by a reasonably

well-qualified attorney under similar circumstances. If the plaintiff can prove that the defendants' representation fell below that standard, the fact-finder also must determine the amount of damages that flowed from the breach. Accordingly, we affirm the denial of the defendants' cross-motion for summary judgment, reverse and vacate the judgment entered in the plaintiff's favor, and remand the case for further proceedings.[1]

¶ 2                                  BACKGROUND

¶ 3      This case stems from a long-running legal dispute that dates back to events occurring at least as early as 2001. The appeal currently before us is taken from a summary judgment order entered in a legal malpractice case against defendants Glenn Seiden, Glenn Seiden & Associates, P.C., and Azulay Horn & Seiden, LLC. Plaintiff Horace Fox is the trustee in bankruptcy for an individual named Miriam Draiman. Draiman was a defendant in a case captioned Multiut Corp. v. Draiman, No. 01 CH 9989 (Cir. Ct. Cook Co.) which was brought against herself, her husband, and five corporations that they owned or controlled. Both Draiman and her husband, Yehuda Draiman (Yehuda), were found liable in that case. Draiman was only found liable for engaging in a civil conspiracy. Her husband and certain of the corporations were accused of and found to be liable for, among other things, violating the Illinois version of the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq*. (West 2012)). Draiman was not named in the deceptive trade practice count.

¶ 4      Under the Deceptive Trade Practices Act, attorney fees may be assessed against a defendant if the court finds that he has willfully engaged in a deceptive trade practice (see 815 ILCS 510/3 (West 2012)). The court in the *Multiut* case found that Draiman's husband purposely

---

[1] Defendants filed a motion to cite additional authority. However, the proposed authority offers nothing to add to the already-developed precedent. The motion is DENIED.

engaged in deceptive trade practices and assessed attorney fees against "the defendants." The plaintiff in that case, Multiut, filed a petition seeking $1,317,026.85.

¶ 5    Defendants Glenn Seiden and Glenn Seiden & Associates initially represented Draiman in the *Multiut* case. However, before trial, another firm was substituted in their stead. After the trial was lost and the petition for attorney fees was filed, Seiden and his firm again appeared on Draiman's behalf, this time for the purpose of handling the posttrial proceedings. Defendants did not explicitly argue on Draiman's behalf that she could not be liable for attorney fees because she was not found liable under the count that authorized the fees—the deceptive trade practice count. They did, however, argue around the periphery that less culpability and, therefore, a lesser amount of fees, should be assigned to Draiman. The order entering judgment for the attorney fees assigned liability to "defendants."

¶ 6    Seiden and his firm filed a motion to clarify the order which again did not make the specific argument that Draiman could not be liable for attorney fees because she was not named in the deceptive trade practice count, but it did present an argument concerning the allocation of fees. However, that motion was never ruled upon because Seiden, on behalf of Draiman, filed a notice of appeal divesting the trial court of jurisdiction. Seiden submitted an affidavit averring that he filed the notice of appeal upon instruction from Draiman and that he was also then instructed to withdraw from the case, which he did.

¶ 7    On appeal, before briefing was complete, the issue of Draiman not being named in the deceptive trade practice count came up. An order was entered, signed by one justice, finding that Draiman was "not liable as to [the attorney fee] portion of the judgment" because she "was not named as a defendant below in the count that resulted in" the fee award. Draiman's appellate

counsel then withdrew and she proceeded on the merits of the appeal *pro se*. In her brief, Draiman apparently did not make a complete argument concerning the award of fees and simply referred to the fact that she was not liable because the attorney fee judgment against her had already been reversed. *Multiut Corp. v. Draiman*, 359 Ill. App. 3d 527, 539 (2005). The court proceeded to Multiut's argument on the attorney fee issue and, noting that Draiman failed to respond to the arguments in her appellate brief, found that Draiman waived any right to contest the fee award by failing to respond to Multiut's arguments on appeal. *Id*. at 540.[2] Draiman filed for bankruptcy.

¶ 8    This malpractice case followed. In this case, Draiman alleges that defendants are liable because they failed to raise the argument that she could not be liable for the fees because the fees were assessed for a violation of a statute that she was never found to have violated. She claims that it was that negligent omission that resulted in the attorney fee judgment being entered against her. The trial court dismissed the case for failing to state a cause of action. We reversed that dismissal and remanded the case for further proceedings. *Fox v. Seiden*, 382 Ill. App. 3d 288, 301 (2008).

¶ 9    On remand, the trial court entered summary judgment for the plaintiff and entered a judgment for $1,882,144.37 against defendants. The order granting summary judgment is one page and does not address any of the specific arguments of the parties or give any reasons for the decision. The judgment was later vacated as to damages, but not as to the liability of the defendants here. A successor judge was at some point assigned to the case and was called upon to

---

[2] While the appeal was pending, Multiut apparently filed a petition for leave to appeal concerning the effect of one judge granting the relief that was granted in this case. That petition was apparently denied (*Multiut Corp. v. Draiman*, No. 98015 (Ill. Sept. 29, 2005 Supervisory Order)), and rightly so as a single justice cannot issue a decision on the merits. Ill. S. Ct. R. 22(c) (eff. Dec. 1, 2008).

consider the issue of damages.   In its order on the issue of damages, the court noted that defendants were essentially trying to reargue the issue of liability which the court found to be inappropriate as beyond the scope of the motion before it.   The court went on to enter a judgment of $1,920,942.63 plus interest against defendants and in favor of the bankruptcy estate, and it entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason to delay appeal of the judgment.   Defendants filed their notice of appeal.

¶ 10     In this appeal, Seiden and Glenn Seiden & Associates filed a brief and Azulay Horn & Seiden filed a separate brief.   Seiden and Glenn Seiden & Associates argue: (1) that they were not the proximate cause of Draiman's damages; and (2) that the case is barred because Draiman has come to the court with unclean hands.   Alternatively they argue (3) that the court erred by entering summary judgment without any expert testimony; (4) that their affirmative defense of comparative negligence raised a question of fact precluding summary judgment; and (5) that the court erred in determining prejudgment interest as a part of the damages.   Azulay Horn & Seiden joins those arguments and additionally argues that it cannot be liable because it was not part of the case at the time that Draiman alleges the negligence occurred.   Azulay also argues that it cannot be liable as a successor because that theory was never pled and never proved.

¶ 11                              ANALYSIS

¶ 12     We review a ruling on a motion for summary judgment *de novo*.   *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8.   Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, viewed in a light most favorable to the nonmovant, fail to establish a genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law.   735 ILCS 5/2-1005 (West 2012); *Progressive*

No. 14-1984

*Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 127-28 (2005). If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Associated Underwriters of America Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1016-17 (2005).

¶ 13 Any chance for Azulay to be liable must first be predicated on Seiden and Glenn Seiden & Associates being liable, so we begin with the arguments raised by the latter. Because Azulay joined in the arguments raised by Seiden and Glenn Seiden & Associates, we will refer to all three collectively as "defendants" while addressing their arguments and we will identify them singularly by name where such a distinction is required.

¶ 14                           I. The Ultimate Question of Law

¶ 15 Underneath all of the current arguments interposed by the parties lies the legal question of: If defendants had done as Draiman suggests they should have, could the trial court have permissibly imposed fees against Draiman? Defendants argue that the question must be resolved in their favor because the trial court knew the deceptive trade practice count was the sole fee-shifting count, knew Draiman was not named in it, and assessed fees against her anyway. They suggest that the trial court's judgment in this malpractice case is error unless we can conclude that, had they made the specific objection, the trial court would have ruled in Draiman's favor. As a counter-argument, plaintiff asserts that in a malpractice case the court is to use an objective standard to assess what the underlying trial court should have done. Plaintiff argues that under that standard, the question of law must be resolved in its favor because Draiman could not have been properly held accountable for attorney fees by the court had defendants made the proffered argument.

No. 14-1984

¶ 16    Plaintiff is correct on the legal standard.   The objective in a legal malpractice case is to consider what the result "should have been," not what the particular underlying trial court would have done.   (Internal quotation marks omitted.)   *Nelson v. Quarles & Brady, LLP*, 2013 IL App (1st) 123122, ¶ 72-73.   So here our objective is to determine whether, with everything else in the case being the same, could the assessment of fees against Draiman stand if the argument was raised and the pure issue of law is considered *de novo*?   See *id*; Restatement (Third) of the Law Governing Lawyers § 53 cmt. b (2000).   Based on the record, we conclude that it could not.   If the trial court had still imposed fees against Draiman after she (or more properly the defendants on her behalf) made the specific objection at issue, as a matter of law, the trial court's ruling would have been improper.   Based on the record at the time the trial court made its attorney fee award, Draiman should not have been found liable for the fees.

¶ 17    Draiman was not named in the deceptive trade practice count.   She was never found liable for committing a deceptive trade practice, let alone for willfully doing so as is required for fees to be assessed.   The trial court did not find that Draiman was accountable for any of the conduct alleged in count V, the deceptive trade practice count, by conspiracy or otherwise.   Nor did the court find that the violation of the Deceptive Trade Practices Act was accomplished by way of a conspiracy.   Instead, the underlying trial court focused on and ruled consistently with its finding that Draiman facilitated Yehuda's breach of contract and breach of fiduciary duty—two causes that require evidence unrelated to what is required for proving the existence of a deceptive trade practice.   Trial court orders must be construed in a reasonable manner so as to give effect to the apparent intention of the trial court.   *Kiefer v. Rust-Oleum Corp.*, 394 Ill. App. 3d 485, 494 (2009).   The court's ruling shows its evident intention that Draiman not be held accountable for

her husband's violation of the Deceptive Trade Practices Act.

¶ 18    The only remark in the underlying trial court's order that plausibly supports defendants' position is that the underlying trial court did state that Draiman "acted in concert with Yehuda in knowingly perpetrating a scheme of identities which were used by him to wrongfully cause damage to [Multiut]."   But even with that *dictum*, defendants acknowledge that there is no precedent for holding a party liable for attorney fees if the party is found to act as a coconspirator in violating the Deceptive Trade Practices Act.   We need not decide that issue, or use this case to create that precedent, because the trial court did not even find Draiman to have conspired to engage in a deceptive business practice.

¶ 19    As a result of the conspiracy finding, the trial court held Draiman accountable for the conduct of Yehuda set forth in counts II, III, and IV, which are for breach of contract and breach of fiduciary duty.   The judgment on those counts was $100,000 for his interference with Multiut's customers and contracts, and $150,000 for money collected by him and his companies in breach of his obligations to Multiut (see pg. 12, Trial Court Jan. 17, 2003 order).   Those causes of action are completely separate from and require completely different conduct than the deceptive trade practice claim.   In finding Draiman liable for conspiracy under count VII, Draiman was called to answer "specifically for:" the same items Yehuda was found liable for under counts II, III, and IV—his breaches of contract and fiduciary duty (see pg. 15, Trial Court Jan. 17, 2003 order). Nothing further.   The judgment language for Draiman's conspiracy is taken verbatim from the judgment language against Yehuda for breach of contract and fiduciary duty with one notable omission—Draiman was specifically not found accountable for the "purposeful and intentional conduct" of Yehuda.   Although the judgment on page 12 of the order contains that finding of

intent against Yehuda, that language is conspicuously absent from the judgment against Draiman on page 15, which is otherwise completely identical.

¶ 20    The deceptive trade practice count received completely separate treatment from the court. The underlying trial court made explicit findings against Yehuda for deceptive trade practices, mentioning him specifically and identifying specific acts committed by him multiple times in its analysis of that count.   Draiman is not mentioned once and is never connected in any way to count V, by way of conspiracy or otherwise.   Under the circumstances as they were, Draiman could not have, as a matter of law, been correctly held liable for attorney fees.   If the specific argument proferred by Draiman was made at the time, and with everything else in the case being equal, the underlying trial court should have ruled in her favor.

¶ 21                II.   The Propriety of Entering Judgment in Plaintiff's Favor

¶ 22    Although the foregoing analysis establishes that there was an omission in representation, it does not necessarily follow that such an omission allows for or compels a recovery for malpractice.   Summary judgment was granted in plaintiff's favor after plaintiff argued that the failure to raise the ideal argument in the underlying case was the type of legal omission for which expert testimony is unnecessary.   We disagree that this case meets that threshold.

¶ 23    Generally, a plaintiff must establish the standard of care against which the defendant-attorney's conduct must be measured through expert testimony, and the failure to present expert testimony is typically fatal to the plaintiff's cause of action.   *Barth v. Reagan,* 139 Ill. 2d 399, 407 (1990).   In rare cases, judgment may be entered for a plaintiff as a matter of law without expert testimony regarding the standard of care—cases in which "the common knowledge or experience of lay persons is extensive enough to recognize or infer negligence from the facts, or

where an attorney's negligence is so grossly apparent that a lay person would have no difficulty in appraising it." *Id*. at 407-08. We have found the common knowledge exception to apply in cases where, for example, the attorney fails to comply with the statute of limitations (*House v. Maddox*, 46 Ill. App. 3d 68, 73 (1977)) or where the attorney fails to take any action whatsoever in regard to the matters entrusted to him by a client (*Sorenson v. Fio Rito*, 90 Ill. App. 3d 368, 374 (1980)). Defendants' omission does not rise to the level of such obvious negligence.

¶ 24 Plaintiff argues that defendants' omission was so apparent that it can be characteristically summed up by the schoolyard term: "Duh!" However, the underlying dispute was, and by extension the question of legal malpractice here is, fraught with thorny legal and factual issues. There are considerations of the American Rule, fee-shifting statutes, the law of conspiracy, waiver, forfeiture, and other legal and factual considerations that are beyond the ken of laypersons. See *Barth*, 139 Ill. 2d at 407-08. Plaintiff does not cite any case law to support its entitlement to summary judgment by analogy in an attempt to demonstrate that the error here is the type of error that would permit summary judgment for a plaintiff without expert testimony. Its inability to do so is telling, but not surprising, because no court in our state has ever taken the common knowledge exception that far.

¶ 25 In addition to proving that there was an error in representation, a malpractice plaintiff is required to prove that the error was negligent. *Mitchell v. Schain, Fursel & Burney Ltd.*, 332 Ill. App. 3d 618, 620 (2002). Even though we have held that the trial court would have committed error had defendants raised the argument and had the court proceeded to reject it, it does not necessarily follow that it was malpractice to not raise the argument. See *DeSeno v. Becker*, 291 Ill. App. 3d 421, 427 (1997) (we are not to use "prophetic knowledge" to conclude that an

attorney's conduct constitutes legal malpractice as a matter of law where an issue of law is not well-settled (internal quotation marks omitted)).   Put simply, an aggrieved party is not entitled to recover for legal malpractice by merely showing that it did not receive perfect representation. Parties have legal recourse only upon proving that they did not receive representation commensurate with the skill and care ordinarily used by a reasonably well-qualified attorney under similar circumstances.   *Johnson v. Halloran*, 312 Ill. App. 3d 695, 699-700 (2000).

¶ 26    Plaintiff is required to demonstrate what the standard of care is and that the representation provided by defendants fell below that standard.   In this case, reasonable minds could very possibly disagree about whether the representation provided by defendants fell below the applicable standard.   Plaintiff did not prove otherwise at the summary judgment stage, so entering judgment in favor of plaintiff was improper.

¶ 27    Moreover, as for the affirmative defense of comparative negligence, the evidence does not conclusively show that the defense to the award of fees had been irretrievably lost at the time defendants were ordered to withdraw from the case.   Even though Draiman had no obligation to take an appeal, once she did, her own errors and omissions could be at least partly to blame for her ultimately ending up on the wrong side of that case.   See *Nika v. Danz,* 199 Ill. App. 3d 296, 312 (1990) (comparative negligence is a proper defense to a legal malpractice claim in Illinois).   This court actually decided that Draiman was not entitled to appellate relief on the attorney fee issue because she did not respond to the arguments in her appellate brief—not that the issue was waived due to any omissions in the trial court.   *Multiut Corp.*, 359 Ill. App. 3d at 540.

¶ 28    As a result of this potential comparative negligence, it is possible that one could conclude that, even if defendants were negligent, omitting the subject argument caused something less than

all of Draiman's injury. Because questions of fact exist concerning comparative negligence, plaintiff has failed to meet its burden of proving the amount of damages attributable to defendants' conduct. See *Wildey v. Paulsen*, 385 Ill. App. 3d 305, 314 (2008).

¶ 29     The failure to affirmatively prove that the omission in representation was a *negligent omission* coupled with the comparative negligence defense makes this case particularly unsuited for summary judgment. The trial court entered a one-page order entering judgment for plaintiff. In its order granting plaintiff's motion for summary judgment and denying defendants' partial cross-motion, the trial court gave no reasons for finding as it did. The trial court did not explain why expert testimony was unnecessary nor did it make any specific finding that this was the type of case where negligence is obvious. See *Sheetz v. Morgan*, 98 Ill. App. 3d 794, 799 (1981) (in assessing a legal malpractice claim at the summary judgment stage, a trial judge may not use his or her own knowledge of the applicable legal standards as a substitute for expert legal testimony). In addition, the trial court did not weigh the possibility that Draiman's putative failures on appeal caused at least part of her damages. Because we cannot divine the reasons for the trial court entering summary judgment for plaintiff or for it entering a judgment in the amount that it did, and because we reject the arguments plaintiff offers in support of it obtaining judgment as a matter of law, we reverse the judgment entered in plaintiff's favor.

¶ 30                III.   Defendants' Arguments for Judgment as a Matter of Law

¶ 31     Defendants argue that they were actually the ones entitled to a judgment in their favor principally because, as a matter of law, they were not the proximate cause of plaintiff's damages. We specifically note that defendants are not claiming that there was a question of fact concerning proximate cause precluding the entry of summary judgment. That is significant because the issue

of proximate causation in a legal malpractice setting is generally considered a factual issue to be decided by the trier of fact. *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 210 (2006). Here though, defendants maintain that if we accept their arguments, they are entitled to the trial court's order being vacated and a judgment being entered in their favor. In that vein, defendants filed a partial cross-motion for summary judgment interposing these arguments in the trial court.

¶ 32                    A. Viability of the Defense

¶ 33    Defendants claim that Draiman still had an available defense to the attorney fee award at the time defendants were discharged from representation so they cannot be the proximate cause of the injury. Where a claim or defense is alleged to have been compromised by a negligent act or omission by an attorney, but the claim or defense is still viable when the attorney is discharged, the attorney is not the proximate cause of any resulting loss. *Mitchell*, 332 Ill. App. 3d at 620-21. Defendants maintain that because plaintiff could have, and did, appeal the attorney fee issue, the issue was "very much alive" at the time they were discharged. Plaintiff, on the other hand, argues that the defense was no longer viable because the matter was decided by a final judgment and defendants never raised the issue on Draiman's behalf in the underlying trial court case. And, plaintiff continues, since the issue was not raised in the trial court it could not have been raised on appeal.

¶ 34    The analysis here dovetails with the comparative negligence analysis above. See *supra* ¶¶ 28-29. It is clear that defendants did not raise the specific argument that Draiman could not be liable because she was not named in the deceptive trade practice count. That simple fact is enough to defeat defendants' argument, interposed as a matter of law, because Draiman did not

have to appeal and there is a likelihood that the court would have considered the argument forfeited on appeal. Arguably, even if Draiman succeeded on appeal, there could have been ascertainable damage which had to be rectified by taking the appeal. If defendants were the cause or even part of the cause they are not entitled to judgment as a matter of law. The question is best left to a trier of fact to decide whether either or both of the parties were negligent and, if both were negligent, which party should bear the burden of the loss and in what amount.

¶ 35                                    B.   Conspirator Liability

¶ 36    Defendants argue that they cannot be the proximate cause of Draiman's loss because Draiman was found to have conspired with her husband who did violate the Deceptive Practices Act, so she was rightfully liable for the attorney fees awarded under that Act. In support of that argument, defendants point to the oft-cited rule that the effect of a conspiracy judgment is to extend liability to each coconspirator for all acts committed in furtherance of the conspiracy (citing *Pinkerton v. United States*, 328 U.S. 640 (1946)). But the statute at issue in this case permits the assessment of attorney fees against a party "only if the court finds that he has wilfully engaged in a deceptive trade practice." 815 ILCS 510/3 (West 2012). The trial court in the underlying case specifically found that Draiman's husband acted willfully while violating the Act. In ruling on the deceptive trade practice count, the trial court explained that "having found that Yehuda Draiman has purposely engaged in deceptive trade practices, it is this court's determination that attorneys' fees and costs in connection with this cause be award[ed] to the plaintiff and against the defendants." The trial court made no such willfulness finding against Draiman herself. The award of fees under the Act is discretionary, which, in and of itself, probably destroys defendants' arguments that Draiman was liable as a matter of law.

¶ 37     The underlying trial court did not even specifically find that Draiman's actions related to the deceptive trade practice count—the only count that authorized the imposition of fees.   Instead, it stated that Draiman "facilitated Yehuda's exploitation of his breach of his fiduciary and contractual employee relationship with [Multiut]."   In our opinion in the underlying case, we concluded that "Multiut demonstrated by clear and convincing evidence that Yehuda and Miriam engaged in a civil conspiracy that enabled Yehuda to breach his contract with and his fiduciary duty to Multiut."   *Multiut Corp.*, 359 Ill. App. 3d at 539.   All implications are that the conspiracy related to breaches of contract and fiduciary duty for which an award of attorney fees would not be permissible.   The underlying trial court never held that the deceptive trade practice was an act committed in furtherance of the conspiracy of which Draiman was a part.

¶ 38     Instead, in a completely separate count for conspiracy, the trial court found Draiman liable, noting that "while it is not the opinion of th[e] court that her participation rises even remotely to Yehuda's level of culpability, she did, with a significant degree of consciousness, facilitate his conduct."   That finding is not consistent with what is required under the Deceptive Trade Practices Act for attorney fees to be assessed.   Instead, it was a general finding that she was involved in her husband's wrongful activity—not specifically that she willfully engaged in a deceptive trade practice.   The underlying trial court even assessed punitive damages against Yehuda and declined to do so against Draiman, noting specifically that it was doing so because Yehuda's conduct was "purposeful and intentional."   The court then specifically noted that "punitive and other nonmonetary damages not be assessed as to Miriam Draiman."   Moreover, even though the underlying trial court left in place the attorney fee judgment against all defendants, it also remarked when the petition for fees was presented and argued before the court

- 15 -

that Draiman was "really nominal only" that she was "complicitous" and "influenced by her husband." So it cannot be said that, as a matter of law, that Draiman is liable for attorney fees under the Deceptive Trade Practices Act just because she was found liable on a civil conspiracy theory in the same case.

¶ 39                                C.   Bankruptcy Court Rulings

¶ 40    Defendants argue that they cannot be the proximate cause of the fee award against Draiman because the bankruptcy court found that the attorney fee debt was nondischargeable because it was a debt incurred from a willful and malicious act due to Draiman's role as a conspirator.   See *In re Draiman*, Nos. 05 A 01783, 05 A 01784, 2006 WL 1876972 (Bankr. N.D. Ill. June 22, 2006).   Defendants also argue that they are not the proximate cause of any loss because the bankruptcy court later found Draiman to be an alter ego of one of the companies found to have violated the Deceptive Trade Practices Act in the underlying case.   See *In re Draiman*, Nos. 05 A 01783, 05 A 01784, 2006 WL 3804874 (Bankr. N.D. Ill. Dec. 22, 2006).

¶ 41                1.   Willful And Malicious Act–June 2006 Opinion

¶ 42    The bankruptcy court, relying on findings made by our state courts, stated that because Draiman "acted in concert with her husband" and "understood and accepted the objectives of the conspiracy," her debt was nondischargeable because she caused a willful and malicious injury to another.   *In re Draiman*, Nos. 05 A 01783, 05 A 01784, 2006 WL 1876972, at *7 (Bankr. N.D. Ill. June 22, 2006); see also 11 U.S.C. § 523(a)(6) (2006) (a debt is not dischargeable in bankruptcy proceedings if the debt arises from a "willful and malicious injury by the debtor to another entity or to the property of another entity").

¶ 43    In the bankruptcy court's opinion, it used collateral estoppel to arrive at its conclusion that

Draiman was barred from relitigating whether she caused a willful and malicious injury to Multiut. The bankruptcy court's discussion and analysis are not binding on the trial court in this malpractice case or on this court. *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶ 74. It is an out-of-jurisdiction case that does not have the same parties or the same issues. In making its finding that Draiman was responsible for a willful and malicious injury, the bankruptcy court, applying federal law, held that Draiman was not entitled to a discharge of her debt. But the court did not address whether the judgment should have been entered against Draiman in the first place. That is the theory on which this malpractice case is based. Draiman may very well have never been before the bankruptcy court had the judgment for fees not been entered against her. We must view the attorney's conduct "in the context of events prevailing at the time of the alleged malpractice, not in light of subsequent developments." *Gruse v. Belline,* 138 Ill. App. 3d 689, 696 (1985).

¶ 44    The bankruptcy court likewise did not address the Deceptive Trade Practices Act, nor did it contemplate the consequence of a party not named in that count being responsible for attorney fees without a finding of liability on the predicate cause of action. No court in this chain of cases ever made a finding that the deceptive trade practice at issue was an act undertaken in furtherance of a conspiracy—much less have any courts specifically connected Draiman to the offending act, even by way of conspiracy. The bankruptcy court's decision does not, as a matter of law, establish that there is no genuine issue of material fact concerning causation for legal malpractice purposes.

¶ 45                    2.    Alter Ego Theory–December 2006 Opinion

¶ 46    The bankruptcy court entertained a second motion for summary judgment on the issue of, among other things, piercing the corporate veil. Multiut argued that Draiman should be

personally liable for the fee award because a company she controlled, U.S. Gas & Energy Corp., was her alter ego. U.S. Gas & Energy Corp. was one of the companies found to have violated the Deceptive Trade Practices Act in the underlying case. After initially stating that it was unnecessary to decide the issue because Draiman was liable on other grounds, the bankruptcy court went on to explain its belief that Draiman was personally liable for the fee award because U.S. Gas & Energy Corp failed to properly observe corporate formalities and keep adequate corporate records. *In re Draiman*, Nos. 05 A 01783, 05 A 01784, 2006 WL 3804874, at *6 (Bankr. N.D. Ill. Dec. 22, 2006). Based on that decision, defendants maintain that they cannot be found to have been the proximate cause of Draiman's injury because regardless of any omission on their part, Draiman is personally liable for the attorney fee judgment against U.S. Gas & Energy Corp. as its alter ego.

¶ 47 The bankruptcy court again used collateral estoppel to disallow Draiman from litigating the issue of whether corporate formalities were observed and whether corporate records were adequately kept. *Id*. The alter ego issue, insofar as it concerns Draiman, was never decided in the underlying case. The underlying trial court found Yehuda to have not observed corporate formalities and the bankruptcy court applied that finding equally to Draiman and held that she was estopped from contesting it. There was never any attempt to pierce the corporate veil as to her in the underlying case.

¶ 48 Again, if not for the judgment for fees against Draiman, she may not have ended up in bankruptcy court. She was not adjudicated to be an alter ego of the company for veil-piercing considerations until three years after the alleged malpractice occurred. The fact that she was found responsible for the fees could actually be the cause of the veil-piercing finding against her.

The resulting analysis is circular—unsuitable for a decision as a matter of law—since Draiman may have never been found to be the alter ego of U.S. Gas & Energy Corp. without defendants' alleged negligent conduct.   See *Gruse*, 138 Ill. App. 3d at 696 (malpractice determinations are not to be made in light of subsequent developments).   Defendants did not even initially raise the issue of collateral estoppel and piercing the corporate veil as an affirmative defense in this case.   They did not attempt to plead the defense until after there was a finding of liability against them—several years after the argument was available to them.

¶ 49                                   D.   Unclean Hands

¶ 50     Defendants' other principal argument is that Draiman cannot recover on the basis that she has unclean hands.   In support of this argument, defendants point to the undisputed finding that Draiman participated in a civil conspiracy, facilitating Yehuda's wrongful conduct against Multiut. The doctrine of unclean hands is intended to prevent a party from taking advantage of its own wrong.   *Thomson Learning, Inc. v. Olympia Properties, LLC*, 365 Ill. App. 3d 621, 634 (2006).

¶ 51     Defendants did not raise this argument until after judgment was entered against them. This case was originally filed in 2005 and defendants did not attempt to use unclean hands as a defense until 2013.   The trial court denied their request to plead it as an affirmative defense. Affirmative defenses must be raised at or before the time to answer the complaint or they are generally forfeited.   *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 22.   A trial court is within its discretion to deny leave to assert an affirmative defense for the first time after significant developments in the case have occurred.   *American Pharmaseal v. TEC Systems*, 162 Ill. App. 3d 351, 361 (1987); *United Air Lines, Inc. v. Conductron Corp.*, 69 Ill. App. 3d 847, 858 (1979). The trial court did not abuse its discretion in denying defendants' request for leave to file an

No. 14-1984

untimely affirmative defense after a finding of liability was made and eight years after the case began.

¶ 52                                CONCLUSION

¶ 53    Based on the foregoing, we hold that defendants are not entitled to judgment as a matter of law on the issue of proximate cause.   Plaintiff is likewise not entitled to judgment as a matter of law because there is no evidence concerning the standard of care, no evidence that the representation provided by defendants fell below that standard, and the error was not of the kind that is so grossly apparent that it would be within the common knowledge of laypersons so expert testimony is required.   There is likewise a possibility that Draiman at least contributed to her own loss so plaintiff has failed to adequately prove the damages attributable to defendants' alleged negligence.   Unfortunately—in the sense that this legal odyssey is 15 years in the making—the judgment for the plaintiff must be vacated.

¶ 54    Accordingly, we affirm the denial of defendants' partial cross-motion for summary judgment.   We reverse the grant of summary judgment in plaintiff's favor and vacate the judgment entered against defendants.   The case is remanded for further proceedings.   We do not reach the parties' arguments regarding the propriety of awarding prejudgment or postpetition interest. Those issues, if necessary, must be reconsidered on remand.   We likewise decline to reach the separate arguments raised by Azulay and instruct the trial court to consider those arguments, if necessary, on remand.

¶ 55    Affirmed in part, reversed in part.   Judgment vacated, cause remanded.