2025 IL App (1st) 242541-U

No. 1-24-2541

Order filed December 11, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KURTSON REALTY, LLC, an Illinois Limited Liability Company, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| | ) | No. 22 M 1114905 |
| v. | ) ) | |
| | ) | Honorable |
| BERTON N. RING, P.C., an Illinois Corporation; and BERTON N. RING, | ) ) | Arlene Y. Coleman-Romeo, Judge presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court properly granted summary judgment in favor of attorney where client did not put forth evidence of legal malpractice. Affirmed.

¶ 2    The circuit court granted summary judgment in favor of defendants Berton N. Ring, P.C. and its president, Berton N. Ring (Ring) (collectively, "defendants") on the malpractice complaint filed by Kurtson Realty, LLC (Kurtson). Kurtson now appeals, arguing that the motion for

summary judgment had previously been stricken by the circuit court and therefore the court lost subject matter jurisdiction to rule on it, or, alternatively, that defendants' motion for summary judgment should not have been granted because there existed genuine issues of material fact as to whether defendants committed legal malpractice. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On November 8, 2019, Kurtson received a letter from the Chicago Police Department (CPD) indicating that one of its properties, 4107 W. 16th Street, in Chicago, had been identified as a public nuisance due to criminal or illegal activity on the premises. The CPD indicated in its letter that Kurtson could be subject to fines and prosecution if actions were not taken to remedy the situation. Kurtson was encouraged to take all reasonable and legal steps to stop criminal activity on the property. The letter further stated that eviction and a permanent ban of the offender were reasonable steps to address the public nuisance.

¶ 5     On December 23, 2019, Kurtson retained defendants to initiate a lawsuit against the tenant of the property in question, Ellis Woodland (Woodland), seeking possession of the premises.

¶ 6     An *ex parte* judgment and order for possession was entered on February 13, 2020, in favor of Kurtson. Woodland later moved to vacate that order, which the circuit court granted. On January 11, 2021, following a contested hearing, an order for possession was entered, again awarding possession of the property and damages to Kurtson. Enforcement of the judgment was stayed, however, due to the moratorium on evictions that was in place in Illinois due to the COVID-19 pandemic.

¶ 7     Kurtson acknowledged in its initial complaint, filed on July 29, 2022, that while there was a moratorium in place on evictions after the contested hearing, there was an exception to the eviction moratorium if a renter posed a health and/or safety risk to others. Kurtson alleged that

Ring should have asserted that exception at the contested hearing, and that if he had, Woodland would have been evicted as of January 2021.

¶ 8 Kurtson further alleged that in January 2022, Ring mistakenly placed the vacated February 13, 2020, order with the Cook County Sheriff's Office for eviction of Woodland, rather than the January 2021 order for possession. Kurtson claimed that it notified Ring by email on January 17, 2022, that the wrong eviction order had been placed with the Sheriff, and that Ring responded that it would be corrected. According to Kurtson, "that never occurred."

¶ 9 Kurtson claimed that due to Ring's alleged mistake, the Cook County Sheriff's Office never executed the eviction request, and Kurtson had to terminate Ring's services and find a new attorney. Kurtson stated that the eviction "still has not been accomplished as the month of July 2022 concludes," and that Kurtson had lost $800 per month from January 2021 through July 2022, totaling $15,200. It also claimed that it paid legal fees to Ring totaling $5,038.69, without an eviction.

¶ 10 Defendants filed Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018) interrogatories to Kurtson on September 14, 2023. The notice of filing is in the record, but not the interrogatories themselves.

¶ 11                                    B. Amended Complaint

¶ 12 On September 26, 2023, Kurtson filed an amended two-count complaint for legal malpractice, consisting of negligence and breach of contract claims. Kurtson alleged that there was an oral agreement between Kurtson and defendants that defendants would provide "legal services necessary to evict tenant Woodland from the premises" and "seek monetary damages for unpaid rent." Kurtson paid defendants $5,038.69 for their services. Kurston alleged that there were grounds for "an immediate eviction of the tenant" due to the November 2019 letter from the CPD,

and that defendants "failed to act on an urgent basis" to assert the exception to the eviction moratorium. Kurtson alleged that after the moratorium was lifted, defendants were obligated to place the January 2021 order for possession with the Cook County Sheriff's Office. Kurtson claimed that defendants placed the wrong order of possession with the Sheriff's Office, and therefore, the sheriff never executed the eviction. Kurtson had to terminate defendants' services and hire a new firm to place the correct eviction order with the Sheriff's Office.

¶ 13    Kurtson further alleged that defendants had a "duty to represent Kurtson in the eviction action with reasonable care, skill, and diligence ordinarily possessed and exercised by other attorneys in the community in similar circumstances." Kurtson alleged that Ring breached his duty "by providing poor legal advice and services on the eviction matter in failing to seek the eviction on an emergency basis, as an exception to the moratorium and then failing to place the proper eviction order with the Sheriff." Kurston claimed that because defendants did not act with due care, skill, or diligence, the tenant stayed until September 21, 2022, even though a possession order was issued in January 2021.

¶ 14    Kurtson claimed the following damages: $15,200 for rent payments it did not receive from the tenant from January 2021 through July 2022, reimbursement of the $5,038.69 it paid to defendants in legal fees, and $1,000 for the legal fees it had to pay another attorney to effectuate the eviction.

¶ 15                           C. Motion for Summary Judgment

¶ 16    On November 20, 2023, defendants filed a motion for summary judgment on the amended complaint. Defendants argued that they performed all services they were hired to do and performed all obligations under the contract. They stated that they were hired to file and prosecute an eviction, not file any eviction orders with the Sheriff's Office.

- 4 -

¶ 17    Ring noted in his affidavit that Kurtson had hired him before, and in those cases, he would prepare the complaints predicated upon the notice prepared by Kurtson, just as he had done this time. On December 19, 2019, he received an email from Kurtson, via Kurtson's agent, Michael Bosco, stating that a notice of termination of tenancy had been served on the tenant in question, demanding rent. Attached was the "Notice of Termination of Tenancy" that Bosco had delivered to the tenant in Unit 2 on December 16, 2019. It stated that there was past-due rent in the amount of $1,400, and that only full payment within 5 days would waive the landlord's right to terminate the lease. It stated that noncompliance would result in a lawsuit. Bosco never mentioned a police report, or an emergency of any kind.

¶ 18    Ring attached the complaint he filed on behalf of Kurtson, dated December 23, 2019.

¶ 19    Ring attested in his affidavit that on February 13, 2020, the court entered an *ex parte* eviction order and back rent against the property in question, plus court costs. The order was attached, indicating that the tenant must move out by February 20, 2020.

¶ 20    Ring stated in his affidavit that he sent a summary to Kurtson, also attached, which stated that if the tenant "has not moved by February 21, 2020, and you want to evict them, please remit a check in the amount of $300." The letter also stated that the court order for possession would become stale after 120 days, and if the tenant was still in possession at that time, Ring would need to file a motion to extend, which would be $200 additional.

¶ 21    Ring stated that he was informed in March of 2020 that the tenant in Unit 2 of the building had filed a motion to vacate the eviction order, and eventually that order was vacated by the court. On January 8, 2021, after a contested hearing, an order for possession was entered in favor of Kurtson, stating that Kurtson was entitled to possession of the property and $12,300 in unpaid rent.

Ring noted that at the time, a moratorium on evictions was in place, so that eviction order was stayed. The order for possession was attached.

¶ 22    Ring also attached an emergency motion that he filed on June 30, 2022, on behalf of Kurtson, which stated that the Sheriff's Office had never executed the order for possession. Ring sought an extension of the period of enforcement of the order of possession through December 31, 2022. Ring noted in the motion that the Sheriff's Office had never executed the order of possession "presumably due to the pandemic." The motion was granted by the circuit court. Ring stated in his affidavit that he was never paid for this service and withdrew from the matter.

¶ 23                    D. Court's Order Striking Motion for Summary Judgment

¶ 24    On November 29, 2023, the circuit court entered an order stating that defendants' motion for summary judgment was "stricken, the Court holding that it is not a responsive pleading." It granted defendants seven days to answer or otherwise plead in response to Kurtson's amended complaint.

¶ 25    On December 6, 2023, defendants answered Kurtson's amended complaint for legal malpractice and included six affirmative defenses.

¶ 26    On December 8, 2023, defendants filed a notice of motion, stating that on December 18, 2023, they would present their "previously filed" motion for summary judgment. On December 18, 2023, the court issued an order setting out a briefing schedule on defendants' motion for summary judgment.

¶ 27                    E. Response to Motion for Summary Judgment

¶ 28    On March 18, 2024, Kurtson filed a response to defendants' motion for summary judgment. Kurtson argued that the parties were still in the pleading stage of litigation, and there were questions of fact remaining. Kurtson argued that defendants' legal malpractice began during the

contested hearing between Kurtson and Woodland regarding the order of possession. Kurtson contended that while at the time the order for possession was being litigated there was a moratorium in place on evictions in the State of Illinois due to the pandemic, an exception to the moratorium was enacted for when a renter posed a health and/or safety risk to others. Kurtson argued that "[b]ecause of the Police Department's threatening letter advising of Woodland's criminal/illegal activity in the leasehold premises, there was an avenue for Ring, P.C. and Ring to pursue an emergency eviction, thus utilizing the State's eviction moratorium exception." Kurtson argued that defendants "failed to establish that the eviction moratorium exception applied here due to the dangers posed by the tenant." Kurtson contended that because no witness was subpoenaed from the CPD, or called to testify, the trial judge stayed the eviction and Woodland continued to remain at the premises.

¶ 29    Kurtson further alleged in its response that after the eviction moratorium was lifted in October 2021, defendants were "tasked with following up on Judge Moltz's January 11, 2021 Order for Possession with the Cook County Sheriff to evict Woodland from the premises." Kurtson argued that defendants did nothing until January 2022, at which point they filed the February 13, 2020, order that had been previously vacated, instead of the January 2021 order.

¶ 30    Kurtson attached the affidavit of Richard Rosenbaum, Kurtson's registered agent. In his affidavit, Rosenbaum claimed that he hired defendants after receiving the letter from the CPD, and requested "that they urgently and on an emergency basis file an eviction lawsuit against Woodland and have him evicted from the premises." Rosenbaum stated that defendants were notified by email on January 17, 2022, that they had placed the wrong eviction order with the Sheriff's Office, and they responded that they would correct it, but never did.

¶ 31 Rosenbaum also stated that Kurtson paid Ring $200 to place the order for possession with the Sheriff's Office, as evidenced by Richard Rosebnaum's credit card statement, which showed a $200 payment on December 29, 2021.

¶ 32 On March 30, 2024, defendants filed their motion to deem their affirmative defenses admitted, since Kurtson had failed to respond to them since December 6, 2023.

¶ 33 On April 15, 2024, defendants filed their reply to Kurtson's response to their motion for summary judgment. They stated that Kurtson's response should be ignored because it was filed two months late. Defendants also argued that Rosenbaum's affidavit contained inadmissible hearsay statements, conclusions of law, and lacked foundation and specificity. Defendants also took issue with the fact that Kurtson failed to submit an expert or opinion affidavit, and that without an expert opinion in an legal malpractice case, summary judgment is proper for the defendants.

¶ 34 F. Circuit Court's Order on Summary Judgment

¶ 35 On July 2, 2024, the circuit court granted defendants' motion for summary judgment in full. It also granted their motion to deem affirmative defenses as admitted and denied Kurtson's motion for leave to file responses to the affirmative defenses.

¶ 36 There is no transcript of the hearing that corresponded with the circuit court's grant of defendants' motion for summary judgment. However, the circuit court certified three documents "to be read together" as the "approved Bystander's Report." Those three documents were Kurtson's Bystander's Report, Ring's Bystander's Statement, and the circuit court's "notes on the rulings."

¶ 37 According to Ring's Bystander's Statement, the circuit court, on July 2, 2024, stated that Kurtson's failure to answer the affirmative defenses was "not a basis for any ruling on the motion for summary judgment." The court stated that the case law is clear that if one party includes an

affidavit to support its motion for summary judgment, and the opposite side "fails to file a counteraffidavit or rebut the affidavit, summary judgment is in order." The court went on to say that in a legal malpractice case, the plaintiff must prove a case within a case. Ring submitted an expert affidavit that "he is an experienced eviction attorney" to support his motion for summary judgment, while Kurtson "failed to submit any expert affidavit." The court stated, "there is no dispute that Ring won the eviction case for Kurtson not once but twice and [Kurtson] fails to include an affidavit of their expert attorney to support their theory."

¶ 38    According to Ring's Bystander's Statement, Kurtson's attorney stated that he did not even start discovery and there had been no case management on the case. Ring stated that this case had been pending for two years and Kurtson could have conducted discovery, or taken depositions, at any time.

¶ 39    According to the circuit court's notes, expert witness testimony "is required for [a] malpractice claim" and there was "[n]o affidavit from expert submitted." The notes also indicated that malpractice "does not occur unless there is a loss of [the] underlying cause of action. [Kurston] prevailed in the underlying eviction case." The court also found that Kurtson "failed to present a factual basis that would arguably entitle [it] to a judgment," and "provided no evidentiary facts to support [its] right to judgment." The court further noted that there were no depositions or interrogatories provided in support of Kurtson's claims, and that Kurtson's "response only state[d] conclusions of law without supporting evidence."

¶ 40    On July 16, 2024, Kurtson filed a motion to vacate and reconsider the circuit court's grant of summary judgment, arguing in part that the order was void because there was no motion for summary judgment pending at the time of the ruling since the court had stricken the motion for summary judgment on November 29, 2023.

¶ 41    Defendants responded that it did not matter that the motion for summary judgment had been stricken because they re-noticed the motion after answering Kurtson's amended complaint. Defendants also argued that Kurtson waived this argument by participating in briefing on the motion and not objecting to it.

¶ 42    On October 10, 2024, the court allowed further briefing on the issue of whether Kurtson had waived the argument regarding the stricken motion for summary judgment by participating in litigation. On that same day, the circuit court entered a revised summary judgment order, stating that defendants' motion to deem affirmative defenses admitted was "denied as being moot since summary judgment is granted."

¶ 43    In Kurtson's brief regarding the stricken motion for summary judgment, it argued that when the court struck defendants' motion for summary judgment on November 29, 2023, it became a nullity and was no longer pending in any capacity. Kurtson argued that defendants never filed a new motion, and therefore, the court lacked subject matter jurisdiction to rule on the stricken motion.

¶ 44    Defendants responded that by entering an agreed briefing schedule after they filed a notice to present the previously stricken motion for summary judgment, Kurtson waived any argument about the validity of the motion.

¶ 45    The circuit court denied Kurtson's motion to reconsider. Kurtson now appeals.

¶ 46                                II. ANALYSIS

¶ 47    As an initial matter, defendants contend that Kurtson's opening brief contains several deficiencies and should be dismissed. Looking at the brief, most glaring is the Statement of Facts section, which Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), dictates must contain facts necessary to an understanding of the case, stated accurately and fairly without argument or

comment, and with appropriate reference to the pages of the record on appeal. Kurtson's Statement of Facts section is rife with argument and the only citations to the record are citations to Kurtson's own complaint.

¶ 48    An appellate court has the right to strike an appellant's brief and dismiss the appeal as a result of the appellant's failure to provide a complete statement of facts. *In re Estate of Jackson*, 354 Ill. App. 3d 616, 629 (2004). Nevertheless, we decline to strike Kurtson's Statement of Facts as defendants have provided an adequate statement of facts, and our review is therefore not hindered by the deficiencies in Kurtson's brief. See *Camelot, Inc. v. Burke Burns & Pinelli, Ltd.*, 2021 IL App (2d) 200208, ¶ 41 (appellee's brief contained adequate statement of facts, and therefore appellate review was not hindered by appellant's deficiencies).

¶ 49    We also note that the trial transcripts and pleadings from the underlying case of *Kurtson Realty, LLC v. Ellis Woodland* (19 M1 720425), have not been provided, despite Kurtson's argument that defendants committed malpractice during the contested hearing in that case. It is the appellant's burden to provide a complete record on appeal in order to facilitate a meaningful review. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record, we presume that the circuit court's order had a sufficient factual basis and conformed with the law. *Id*. at 392. We resolve all doubts arising from the incompleteness of the record against the appellant. *Id*.

¶ 50                          A. Subject Matter Jurisdiction

¶ 51    Kurtson's chief argument on appeal is that the circuit court lacked subject matter jurisdiction to rule on defendants' motion for summary judgment because the order had been stricken on November 29, 2023, and never refiled.

¶ 52     On November 20, 2023, defendants filed a motion for summary judgment on Kurtson's amended complaint. On November 29, 2023, the circuit court entered an order stating that defendants' motion for summary judgment was "stricken, the Court holding that it is not a responsive pleading." It stated that defendants were granted seven days to answer or otherwise plead in response to Kurtson's amended complaint. On December 6, 2023, defendants answered Kurtson's amended complaint and included six affirmative defenses.

¶ 53     On December 8, 2023, defendants filed a notice of motion, stating that on December 18, 2023, they would present their "previously filed" motion for summary judgment. On December 18, 2023, the court issued an order setting out a briefing schedule on defendants' motion for summary judgment. There was no objection, and briefing ensued on the motion for summary judgment.

¶ 54     Generally, the intention of the court is determined by the order entered, and where the language of the order is clear and unambiguous, it is not subject to construction. *Won v. Grant Park 2, LLC,* 2013 IL App (1st) 122523, ¶ 33. Here, there is ambiguity because the court used the term "stricken" and not "denied" or "dismissed." This could mean that the motion had merely been stricken from the day's court call, rather than denied or dismissed.

¶ 55     When it is necessary to construe a court order, it should be interpreted "in the context of the record of proceedings and the situation which existed at the time of its rendition." *Belluomini v. Lancome*, 207 Ill. App. 3d 583, 586 (1990). In this case, the court noted in its order that defendants' motion for summary judgment was not a proper response to the amended complaint and that it was "stricken," while also granting defendants seven days to respond to the amended complaint. After defendants filed an answer to the amended complaint, they then filed a notice a of motion, stating that on December 18, 2023, they would present their "previously filed" motion

for summary judgment. Kurtson never objected, and a briefing schedule was agreed to by both parties on December 18, 2023. Accordingly, it is apparent from the record that the court and the parties understood the "stricken" language to mean that the motion for summary judgment had merely been stricken from the court call on November 29, 2023, and not denied or dismissed with prejudice.

¶ 56    We find support for this interpretation in *Belluomini*. In that case, the plaintiff filed a product liability action in April of 1983. *Id*. at 584. The cause was dismissed for want of prosecution when the plaintiff failed to appear at a pretrial conference. *Id*. Within 30 days of the dismissal, the plaintiff filed a motion to vacate the dismissal. *Id*. She noticed the motion for hearing on July 17, 1985, but failed to appear at the hearing. *Id*. The court entered an order stating that the plaintiff's motion to vacate "is stricken, and the previous court order dismissing this cause for want of prosecution stands in effect." *Id*.

¶ 57    In April of 1989, the plaintiff re-noticed the motion to vacate for hearing on May 10, 1989. *Id*. at 585. At the hearing, the defendants argued that the order striking the motion was a denial of the motion, which operated as an adjudication on the merits. *Id*. The circuit court granted the plaintiff's motion to vacate. *Id*. It also certified the question of whether its order striking the motion merely had the effect of striking the motion from the court call and leaving it pending, or whether it constituted a "denial or dismissal of the plaintiff's motion to vacate." *Id*. at 584-85.

¶ 58    On appeal, this court found that the language striking the motion was "plainly ambiguous." *Id*. at 585. We interpreted the court's order "as meaning that the motion, although stricken from the court call, remained pending," because it did not use the terms "denied" or "dismissed." *Id*. at 586. We also distinguished a case that had used the phrase "stricken with prejudice," finding that

the term "'with prejudice' clearly denoted a finality lacking in the instant case." *Id*. (citing *B-G Associates, Inc. v. Giron*, 194 Ill. App. 3d 52, 56 (1990)).

¶ 59 Similarly, here, there was no language in the circuit court's order that denoted finality. The motion for summary judgment was merely "stricken" and when it was re-noticed a few weeks later, there was no objection, indicating that the court and all parties understood the motion to still be pending.

¶ 60 We are unpersuaded by Kurtson's reliance on *Yazzin v. Meadox Surgimed, Inc*., 224 Ill. App. 3d 288 (1991) and *Joseph v. Evergreen Motors, Inc*., 2019 IL App (1st) 180360. In both *Yazzin* and *Joseph*, the plaintiffs filed posttrial motions within 30 days of judgment. *Yazzin*, 224 Ill. App. 3d at 289; *Joseph*, 2019 IL App (1st) 180360, ¶ 21. The court then struck the motions, and the plaintiffs filed new notices of motions to consider the previously stricken posttrial motions. *Yazzin*, 224 Ill. App. 3d at 289; *Joseph*, 2019 IL App (1st) 180360, ¶ 22. In both cases, the court on appeal held that because the re-noticing of the posttrial motions occurred more than 30 days after judgment, the court lost jurisdiction to hear it. *Yazzin*, 224 Ill. App. 3d at 291; *Joseph*, 2019 IL App (1st) 180360, ¶ 25.

¶ 61 In both *Yazzin* and *Jospeh*, the motions at issue were posttrial motions that had 30-day jurisdictional deadlines. The cases merely establish that posttrial motions that are stricken and are no longer pending cannot be refiled after a jurisdictional deadline has passed. This is distinguishable from what happened in our case, where a motion for summary judgment was stricken, with no jurisdictional deadline, and re-noticed within a few weeks of being stricken.

¶ 62 Given our interpretation of the order at issue, Kurtson's contentions fail. Because the motion was not denied or dismissed, it remained pending, and there were no subject matter jurisdiction concerns when it was re-noticed a few weeks later. Moreover, the transcript for the

hearing on the date in which the motion for summary judgment was stricken does not appear in the record on appeal. Because the appellant has the duty to present a complete record on appeal, any doubts arising from an incomplete record are resolved against the appellant and issues which depend on facts not in the record mandate affirmance. See *Yazzin*, 224 Ill. App. 3d at 291. As a result, any doubt as to whether the court meant to merely strike the motion for summary judgment from the court call, or to deny or dismiss it, must be resolved against Kurston.

¶ 63                                B. Summary Judgment

¶ 64    Kurtson alternatively contends that defendants' motion for summary judgment should not have been granted because several issues of material fact still existed. Specifically, Kurtson alleges that Rosenbaum's affidavit contradicted Ring's affidavit regarding whether defendants performed all the duties they were hired to perform.

¶ 65    "The purpose of summary judgment is not to try a question of fact, but simply to determine whether a genuine issue of triable fact exists." *Sameer v. Butt*, 343 Ill. App. 3d 78, 85 (2003). To determine whether a genuine issue of material fact exists, "a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent." *Id*. We review *de novo* a circuit court's decision to grant a motion for summary judgement. *Id*. at 84. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 66    The party moving for summary judgment bears the initial burden of proof either by affirmatively showing that some element of the case must be resolved in its favor or by establishing that there is an absence of evidence to support the nonmoving party's case. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). To prevent the entry of summary judgment, the nonmoving party must present a *bona fide* factual issue and not merely general conclusions of law. *Bank Financial,*

*FSB v. Brandwein*, 2015 IL App (1st) 143956, ¶ 40. Therefore, while the party opposing the motion is not required to prove his case at the summary judgment stage, he must provide some factual basis to support the elements of his cause of action. *Id*. On a motion for summary judgment, the court cannot consider any evidence that would be inadmissible at trial. *Id*. Thus, the party opposing summary judgment must produce some competent, admissible evidence which, if proved, would warrant entry of judgment in his favor. *Id*. Summary judgment is appropriate if the nonmoving party cannot establish an element of his claim. *Id*. We may affirm on any basis appearing in the record, whether or not the circuit court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp*., 230 Ill. App. 3d 40, 50 (1992).

¶ 67 To prevail on a legal malpractice claim, a plaintiff must plead and prove (1) that the defendant-attorney owed the plaintiff-client a duty of due care arising from an attorney-client relationship, (2) that the attorney breached that duty, (3) that the client suffered an injury in the form of actual damages, and (4) that the attorney's breach was the proximate cause of those actual damages. *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008).

¶ 68 The fact that an attorney owed a duty of care and breached that duty is not enough to sustain a cause of action. *Fox*, 382 Ill. App. 3d at 295. Even if an attorney was negligent, a plaintiff cannot recover unless that negligence proximately caused actual damages. *Id*. Thus, both proximate cause and actual damages are essential to a viable cause of action. *Id*. "To satisfy the proximate cause aspect of a malpractice action, the plaintiff must essentially plead and prove a 'case within a case,' meaning that the malpractice complaint is dependent on the underlying lawsuit." *Fabricare Equipment Credit Corp. v. Bell, Boyd, & Lloyd*, 328 Ill. App. 3d 784, 788 (2002) (quoting *Sharpenter v. Lynch*, 233 Ill. App. 3d 319, 323 (1992)). The plaintiff must plead sufficient facts to establish that "but for" the negligence of the attorney, the client would have succeeded in the

underlying suit. *Fox*, 382 Ill. App. 3d at 299. "Because legal malpractice claims must be predicated upon an unfavorable result in the underlying suit, no malpractice exists unless counsel's negligence results in the loss of the underlying action." *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 525 (1995).

¶ 69 Here, defendants have shown that "there is an absence of evidence to support the nonmoving party's case." *Nedzvekas*, 374 Ill. App. 3d at 624 (the party moving for summary judgment bears the initial burden of proof either by affirmatively showing that some element of the case must be resolved in its favor or by establishing that there is an absence of evidence to support the nonmoving party's case). While Kurston alleged that there were grounds for "an immediate eviction of the tenant" due to the November 2019 letter from the CPD, and that defendants "failed to act on an urgent basis" to assert the exception to the eviction moratorium, there was simply no evidence in the record that Kurtson hired Ring to effectuate an emergency eviction. To the contrary, emails exchanged between Bosco and Ring show that Bosco delivered a five-day notice to the tenant, entitled "Termination of Tenancy", which stated that there was past due rent in the amount of $1,400, and that if the owed rent was not paid within five days, the tenancy would be terminated and suit for possession would ensue. Kurtson, via its agent Bosco, drafted and delivered that termination notice, thereby providing the basis for the lawsuit that would be initiated by defendants.

¶ 70 Thereafter, defendants successfully obtained an *ex parte* judgment for eviction and back rent in Kurtson's favor, plus court costs, in February of 2020. Ring sent a summary to Kurtson explaining the court judgment and stating that if the tenant "has not moved by February 21, 2020, and you want to evict them, please remit a check in the amount of $300." The letter also stated that the eviction order would become stale after 120 days, and if the tenant was still in possession at that time, Ring would need to file a motion to extend, which would be an additional $200.

¶ 71    The tenant then moved to vacate the order, and a contested hearing ensued. There are no transcripts or pleadings from that underlying case in the record, but we know that after the conclusion of the hearing, an order of possession was once again entered in favor of Kurtson and against the tenant. Accordingly, there was no unfavorable result in the underlying suit upon which to predicate a malpractice lawsuit. See *Ignarski*, 271 Ill. App. 3d at 525 (because legal malpractice claims must be predicated upon an unfavorable result in the underlying suit, no malpractice exists unless counsel's negligence results in the loss of the underlying action).

¶ 72    Additionally, Kurtson argues that Ring placed the February 2020 order for possession, rather than the January 2021 order for possession, with the Sheriff's Office, causing a delay in the eviction. Again, there is simply no evidence in the record that Ring filed *any* order of possession with the Sheriff's Office before being contacted in June 2022 to file an extension of time to effectuate the eviction. As can be seen in his summary email in 2020, Ring's practice was to obtain an order for possession, and if the client desired an eviction to be effectuated, it would cost an additional $300. Ring also communicated to Kurtson that if a motion to extend the eviction order was needed, it would cost an additional $200. While Rosenbaum attached a credit card statement of his showing a $200 payment to Ring in December of 2021, there is no indication in the record what that was for, and the next motion filed by Ring was a motion to extend the eviction order in June 2022.

¶ 73    Moreover, a plaintiff must establish the standard of care against which the defendant-attorney's conduct must be measured through expert testimony, and the failure to present expert testimony is typically fatal to the plaintiff's cause of action. *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 23; Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018). Here, Kurtson failed to file an expert witness affidavit attesting to the standard of care or even identify an expert witness within its

discovery answers or other pleadings. "This court has previously held that summary judgment is appropriate when a plaintiff could not obtain expert testimony necessary to prove negligence." *Brainerd v. Kates*, 68 Ill. App. 3d 781, 787 (1979); see also *Fox*, 2016 IL App (1st) 141984, ¶ 26 ("Plaintiff is required to demonstrate what the standard of care is and that the representation provided by defendants fell below that standard."). Without an expert opinion in a legal malpractice case, summary judgment was proper for defendants.

¶ 74 To the extent that Kurston argues the reason for its failures to produce evidence of malpractice or to name expert witnesses was because discovery was still ongoing, we remain unpersuaded by that argument. Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) outlines the procedure to follow when material facts are not obtainable in relation to a pending motion for summary judgment, and it requires "naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn." "When the nonmovant has had ample time for discovery, and does not even request a continuance for discovery, there is no reason why noncompliance with Rule 191(b) should be excused; the rule clearly outlines the procedure to be followed for procuring necessary affidavits containing material facts that are unavailable to the nonmovant when the summary judgment motion is filed." *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 28. Here, Kurston filed its complaint for legal malpractice on July 29, 2022. The circuit court granted defendants' motion for summary judgment on July 2, 2024. After nearly two years of litigation, Kurston had not propounded any discovery upon defendants, and had not produced any evidence of defendants' alleged legal malpractice in connection with their representation of Kurston during the underlying eviction case. Accordingly, Kurston cannot now argue that the motion for summary judgment was premature.

¶ 75                                III. CONCLUSION

¶ 76    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 77    Affirmed.